## WARREN *vs.* LEE & LARKINS.

[CREDITORS' BILL TO ESTABLISH AND ENFORCE GENERAL ASSIGNMENT.]

1. *What is general assignment.*—A mortgage or deed of trust, by which one partner, who, on the dissolution of the partnership, agreed to take all the partnership property and assets, and bound himself to pay all the partnership debts, conveyed all the partnership effects, together with all his individual property, to the sureties on his bond of indemnity to his co-partner, for their security and indemnity against liability for the partnership debts, is a general assignment, (Code, § 1556,) and, on proof of the grantor's insolvency, enures to the benefit of his individual creditors equally with the secured creditors.

APPEAL from the Chancery Court of Pike.
Heard before the Hon. WADE KEYES.

THIS bill was filed by Jeremiah Warren, the appellant, in behalf of himself and such other creditors of Jacob Pruitt as might come in and contribute to the expenses of the suit. It alleged, that on the 28th September, 1855, said Pruitt as principal, with Charles S. Lee and Thomas P. Larkins as sureties, executed their written obligation to one James M. Canthen, to indemnify him against liability for the debts of the late firm of Pruitt & Canthen, of which said Pruitt and Canthen were sole members; that said debts amounted to $5,000, or other large sum, and were assumed by said Pruitt individually; that Canthen, by the same instrument, released to Pruitt all his right, title and interest in and to all the goods and assets of the firm, with the outstanding notes and accounts; that on the next day Pruitt executed a conveyance to said Lee & Larkins " of all his property of every kind and description, which greatly exceeds in value the firm debts of Pruitt & Canthen, to the payment of which alone they are directed by said deed to be applied;" that said deed is a general assignment, by which a preference is given to the creditors of Pruitt & Canthen over the other creditors of the grantor; that a large portion of the property conveyed by it belonged to Pruitt individually, and many of

his individual debts were contracted for and on account of it; that the grantees refuse to consider it a general assignment, and are applying the proceeds of the property to the payment of the partnership debts, to the exclusion of the individual debts of said Pruitt; that Pruitt is insolvent, and was at the time of the making of said assignment; and that he is indebted to complainant, in the sum of about $2,256, evidenced by three promissory notes, dated 25th April, 1855, and due respectively on the 1st January, one, two, and three years after date. The prayer of the bill was, that the deed might be declared a general assignment, and held to enure to the equal benefit of all Pruitt's creditors; that the grantees might be enjoined from further disposing of the property, and made to account for the proceeds of sale already received by them; and the general prayer, for other and further relief, was added. In the interrogatories annexed to the bill, the respondents were required to answer, "whether the deed to said Lee & Larkins was not executed as stated in the bill; whether said assignment did not embrace all the property of said Pruitt; if not, what remained; whether said Pruitt was not insolvent at the time of making the same; and whether said firm of Pruitt & Canthen is not indebted $5,000, or to what amount."

The deed from Pruitt to Lee & Larkins recited as its consideration the grantees' suretyship on the grantor's bond of indemnity to Canthen, and contained the following provisions: "I have this day, and, by these presents, do hereby bargain, sell, convey, confirm, assign and deliver, unto the said Lee & Larkins, all the goods that I now have on hand at Elba, and all the goods now *in transitu* for Elba marked to Pruitt & Canthen, and all my notes and accounts made to me in 1854 and 1855, as well as all those made to Pruitt & Canthen during that time; also, all the goods, wares and merchandise that I at any time have on hand for sale, until the said liability is discharged; also, my house and lot now occupied by me as a storehouse, and my horse and buggy; all which are to remain in the possession of said Pruitt, until the funds shall be collected, and the said goods sold, and the business of

29

said Pruitt to progress, but to pay the proceeds of said business on said firm debts, so as to discharge them as fast as they mature. *Provided*, nevertheless, that if the said Pruitt shall so far neglect, refuse or fail to meet the liabilities so incurred in said agreement, as to make said Lee & Larkins liable for or on account of said instrument, it shall then be lawful for said Lee & Larkins, by themselves, or some suitable person whom they may appoint, to seize upon the personal and real property hereinbefore named, and advertise the same for ten days at Elba, and sell the same for cash, or so much thereof as will be of value to meet said debt about to fall against them, and to take into possession the books, notes and accounts, and commence suit thereupon, in their own names or otherwise, to collect a sufficiency to pay off the amount that may be against them, or about to fall so; but, if the said Pruitt shall meet the said liabilities, without harm to said Lee & Larkins, then this obligation to be void," &c.

Lee & Larkins filed a joint answer, in these words:

"In relation to the paper writing sought to be decreed a general assignment, respondents aver, that it was made under the following circumstances, and upon the following considerations and agreements: Pruitt & Canthen were partners in the mercantile business. In Pruitt's absence, Canthen took possession of the effects of the firm, locked up the store, and refused to let Pruitt into possession until he would secure him (Canthen) against all liability on account of the firm debts. Pruitt then came to these respondents, who were not concerned in said firm business, nor in any way liable for its debts, and asked them to go his security on a bond to indemnify said Canthen as he had demanded. In order to help said Pruitt to get into possession of said effects, and to go on with his said mercantile business on his individual account, respondents agreed to sign said bond of indemnity to Canthen, upon the express condition and consideration that he should release to said Pruitt all his interest in the partnership property and effects, and that Pruitt should mortgage to respondents all the property named in said deed, to indemnify them against

all loss; all which was done at one and the same time, and as part of one and the same transaction. And respondents submit, that whether said instrument is a general assignment or not is purely a legal question upon the facts, and deny that it was a general assignment unless the law makes it so upon the facts; and in case the question of general assignment or not is regarded as a matter of fact, and not of law, then respondents deny it as a matter of fact.

The cause was submitted for final decree, on bill and answer, and an agreement of counsel in these words: "All the averments of fact in the answer are to be taken as true; each party reserving the right of appeal to the supreme court, as in other causes." The chancellor dismissed the bill, and his decree is now assigned as error.

PUGH & BULLOCK, for the appellant.

No counsel appeared for the appellees.

RICE, C. J.—The main question is, whether the deed executed by Jacob Pruitt to the respondents, on the 29th day of September, 1855, a copy of which is set forth in "exhibit B" to the bill, is a general assignment, by which a preference or priority of payment is given to some of his creditors over all his other creditors. *The facts averred* in the answer are reconcilable with an affirmative response to that question, and with the allegations of the bill not denied or disproved in any manner whatever. Upon the facts thus averred, the "respondents submit, that whether said *instrument* is a general assignment or not, is purely a legal question upon the facts, and deny that *it* was a general assignment, *unless the law makes it so upon the facts;* and in case the question of general assignment or not is regarded as a matter of fact, and not of law, then respondents deny it as a matter of fact." The quotation thus made from the answer contains everything in it which has even the semblance of a denial or contradiction of any of the allegations of the bill.

If anything contained in that quotation can be construed into a denial of any allegation of the bill, it cer-

tainly is a denial of no more than the single allegation "that said paper writing is a general assignment." Conceding, then, that the answer does deny that single allegation, and regarding that allegation as expunged, the other allegations of the bill not contradicted by the answer very clearly show, that the deed executed by Jacob Pruitt on the 29th day of September, 1855, is a general assignment, by which a preference or priority of payment is given to some of his creditors over all others.—Holt & Chambers v. Bancroft, Betts & Marshall, 30 Ala. Rep.

As the deed appears to be of that character, it enures "to the benefit of all the creditors of the grantor equally," by virtue of the provisions of section 1556 of the Code.

The chancellor erred in dismissing the bill. For that error, his decree is reversed, and the cause remanded, to be proceeded in consistently with this opinion. The appellees must pay the costs of the appeal.