# Rapier *v.* Gulf City Paper Company.

*Bill in Equity by Assignee of Newspaper Establishment, for Account, Receiver, Redemption, etc.*

1. *Averments of bill, as to complainant's interest and right to relief.*—A bill in equity must show, by its allegations, that the plaintiff has an actual, existing interest in the subject-matter of the suit, giving him the right to sue concerning it, and must set forth every essential fact necessary to show his right to maintain the bill; its allegations being construed most strongly against him, since he is presumed to state his case as favorably as the facts will justify.

2. *Bill to redeem; who may file.*—No person can come into a court of equity, for a redemption of a mortgage, but he who is entitled to the legal estate of the mortgagor, or claims a subsisting interest under him.

3. *Assignment; what property passes by descriptive words used.*—An assignment of "the property known and described as the *Mobile Daily and Weekly Register* newspaper, and all the property and materials in and belonging to the printing establishment thereof, and of the job-printing and book-binding establishment, and of the offices connected therewith, with the rights, contracts, and privileges attaching thereto,"—does not convey any interest in the house and lot in which the business is conducted, although it belongs to one of the assignors individually, and has been used for the purposes of the business.

4. *Partnership; use of partner's individual property by.*— When a partner devotes his individual property, or the usufruct thereof, to the uses of the partnership, the title remaining in him, and there being no express contract of lease, the use ceases on the termination of the partnership. and does not pass to an assignee of the partnership property.

5. *General assignment*—An assignment of all his property by a debtor, for the benefit of one or more preferred creditors, is not prohibited, nor declared void by the statute (Code, § 2126): it will be held to enure to the benefit of all the creditors equally, at the instance of those who are not preferred; but, as between the parties themselves, the other creditors not interfering, it has effect and operation according to its terms.

6. *Receiver; when property is involved in claim suit.*—When personal property is seized under legal process, and a claim to it is interposed by a third person, who gives bond for a trial of the right of property under the statute (Code, §§ 3341-49), the property is regarded as in the custody of the law, until the termination of the claim suit; "and there can scarcely arise a necessity, in any case, for the appointment of a receiver by a court of equity, at the instance of the plaintiff in the writ, pending the claim suit."

7. *Same; against mortgagee in possession.*—The general principle is, that a mortgagee in possession will not be dispossessed by the appointment of a receiver; and a case is not taken out of the operation of this principle, because the property in controversy is a newspaper and printing establishment, which it may be desirable to sell as an active business in actual operation.

8. *When junior mortgagee or assignee may come into equity.*—When personal property is incumbered by several conflicting liens and claims, created by mortgages, the levy of executions, and the interposition of a statutory claim to try the right of the property, the holder of a junior claim or lien, whether as judgment creditor, mortgagee, or assignee of the mortgagor, may come into equity, to have the respective liens adjusted, and the property sold for their satisfaction.

9. *Statement of plaintiff's title to relief.*—When a plaintiff asks relief as a purchaser, but the facts on which his right to relief depends, as stated in the bill, show that he is entitled to the relief sought as mortgagee, the bill is not demurrable on account of the mistake in the conclusion drawn from the facts.

10. *Plea of pending suit as bar.*—A pending suit in equity, under a bill filed on behalf of all the creditors of a dissolved partnership, seeking to have a conveyance of its property to one of its creditors, who is made a defendant, declared a general assignment for the equal benefit of all its creditors, is not a bar to a bill by the preferred creditor, asserting his rights under the conveyance, and asking relief against the claimants of adverse liens and incumbrances, although he might maintain a cross-bill in the other suit.

APPEAL from the Chancery Court of Mobile.

Heard before the Hon. H. AUSTILL.

The bill in this case was filed, on the 15th May, 1877, by the Gulf City Paper Company, a corporation chartered under the laws of this State, against John L. Rapier, Joseph Hodgson, the personal representative of John Forsyth, deceased, and several other persons ; and sought to assert and enforce, against the conflicting claims and liens of the several defendants, the claimant's rights to the property belonging to the printing establishment known as the *Mobile Register* office, as hereinafter more particularly described. According to the allegations of the bill, said Forsyth and Rapier formed a partnership on the 7th April, 1874, for the purpose of publishing the *" Mobile Daily and Weekly Register,"* a newspaper in Mobile, "and for doing a general book-publishing and job-printing business" ; and while engaged in this business, they became indebted to the complainant in this suit, for paper and materials sold and delivered, to a large amount, for a part of which debt they gave the promissory note of the partnership. The plaintiff recovered judgment on this note, at the Spring term, 1876, of the Circuit Court of Mobile, for $5,-036.96 ; and an execution on this judgment was placed in the hands of the sheriff of said county, on the 22d June, 1876 ; "which said execution," the bill alleged, "was a lien on all the real and personal property of said firm, and of said defendants, in said county." On the 10th May, 1876, under a bill filed by Rapier against Forsyth, a dissolution of said partnership was decreed by the Chancery Court of Mobile, and the assets of the firm were placed in the hands of Hodgson, as receiver. On the 22d June, 1876, after the issue of said execution, complainant filed its petition in said cause, asking that its judgment might be paid out of the partnership assets ; " but, on motion, and by consent of said Forsyth and Rapier, the cause was dismissed on the 29th June, and all decrees and orders rendered therein were set aside and vacated, and said petition was dismissed without prejudice." After the filing of said petition, " and with knowledge of com-

[Rapier v. Gulf City Paper Company.]

plainant's execution and petition," Hodgson purchased from Forsyth " all his interest in the property and effects of the said firm of Forsyth & Rapier, and assumed all the debts and liabilities of said Forsyth, and also purchased a one-half interest in the *Mobile Register* property used by said firm, and which was the private property of said Forsyth, and leased from Forsyth the other half-interest therein, for the term of several years." Hodgson and Rapier then formed a partnership, under the firm name of John L. Rapier & Co., for the purpose of continuing the printing and publishing business as the old firm had done, and took possession of all the property and effects of the old firm ; and the bill charged, on information and belief, " that said new firm agreed with said old firm to carry out the contracts, and pay all the debts of said old firm, including complainant's said debt, and also agreed to pay certain bonds of said Forsyth, secured by a mortgage on certain of said property, and to carry out the contract between said Forsyth and the holders of said bonds in reference thereto." Said new firm " also proposed to satisfy complainant's execution by installments, but failed to do so ; and on the 11th November, 1876, the sheriff levied said execution on the said property in the hands of John L. Rapier & Co., being the said *Register* property formerly of Forsyth & Rapier, so transferred to said new firm, and more particularly described in the sheriff's return on the execution." The property was advertised for sale under this levy; " but, by the express consent of said Forsyth, Rapier, Hodgson, and complainant, and in order that the property might bring a better price, the special deputy-sheriff was authorized to *run* said property, and to publish the *Register* newspaper, and continue the business until the day of sale, that the same might be sold as a going concern." The sale was postponed, from time to time, at the special instance and request of Forsyth, Rapier, and Hodgson ; " and when said sale was about to take place, said parties failing to satisfy said execution by payment of the money, they agreed with complainant that, as said property, if sold at public auction, would not bring as much as complainant's execution, and would be damaged by such sale, into whosesoever hands the same might come, and as they would have no right to redeem said newspaper property, that if complainant would forbear pushing said execution and sale, and allow them an opportunity to reclaim and repossess themselves of the said property, they would sell, transfer, and set over said property to complainant, as a settlement of said execution, with a condition for repurchase, upon agreed terms, within a limited time." "After some consideration of the matter, an agreement was entered into, and

a sale of said newspaper was made to complainant, with all the property, rights, contracts, and privileges belonging thereto."

This contract, a copy of which was made an exhibit to the bill, was in these words: "For and in consideration of $5,035 to us in hand paid at and before the sealing and delivery of these presents, the receipt whereof is hereby acknowledged, we, John Forsyth, John L. Rapier, and Joseph Hodgson, parties of the first part hereto, do hereby bargain, sell, assign, transfer, set over and deliver to the Gulf City Paper Company, the party of the second part, the property known and described as the *Mobile Daily and Weekly Register*, and all the property and material in and belonging to the printing establishment thereof, and of the job-printing and book-binding establishment, and of the offices connected therewith, with the rights, contracts, and privileges attaching thereto, and including and embracing the property mortgaged by said Forsyth to E. B. Lott, trustee, etc., and also to C. K. Foote, Leroy Brewer, and A. Proskauer, trustees, to secure certain bonds; and including the property levied on and now held by the sheriff of Mobile county, under an execution and *venditioni exponas* issued on a judgment obtained in the Mobile Circuit Court by said Gulf City Paper Company." The instrument then recites the rendition of said judgment, the issue and levy of the execution, "which is a lien on said property," Hodgson's purchase from Forsyth, and the several postponements of the sale," and proceeds thus: "And whereas said property, if sold at sheriff's sale, would not bring more than said judgment, if as much; and whereas all parties concerned deprecate the public sale of said property, as being injurious to the future interest of said newspaper, by whomsoever conducted or owned, and whereas there is no legal right of redemption of said property, if so sold; and whereas the sale and transfer herein made of said property is to the interest of all, and to the prejudice of none of the parties concerned: It is agreed between the parties, that the said party of the second part, upon the payment to it, within thirty days from these presents, of $2,500 in cash, and the securing to be paid, as hereinafter stated, all debts that may at the time be due it from the said parties of the first part, or any of them, together with the interest thereon, and all reasonable costs, charges, fees, and expenses, paid or incurred by said company in and about the obtaining of said judgment, or arising therefrom, and of the execution, levy, and *venditioni exponas*, postponements of the sale, and of the execution of the necessary papers between the parties, and the principal and interest, if any such, paid or incurred by said

[Rapier v. Gulf City Paper Company.]

second party, on account of any other or prior judgment to theirs; all of which are to be secured by good and approved security, to be paid in three equal installments, at two, four, and six months; then the said party of the second part will forthwith sell and re-transfer, and deliver to them, the said first parties, for and upon the said consideration, and according to their respective interests, the property herein sold, transferred, and delivered by the first, to the second parties hereto, or such portion thereof as may at the time be in existence. Or, if said first parties shall pay said $2,500 within the said thirty days, and shall make payment of all the other sums, in the installments, and at the times above provided; thereupon, the last of said payments so being made, the said company will sell, re-transfer, and deliver said property as aforesaid. It is further understood and declared, that the said company does, by this bill of sale, become in all things the absolute owner of said property, and not liable in any way to account to or with the said first parties, for or on account of the use of said property, or for any profit or revenue that may be derived therefrom; the said first party having, by these presents, only the right to re-purchase the said property, for the consideration, and upon the conditions named. And the said second party is hereby authorized and empowered to take and collect the outstanding book accounts and credits of the firm of John L. Rapier & Co., and to pay and settle the current debts of the newspaper and office, and of the firm, and shall account therefor to and with said firm, or the members thereof, in reference to said collections and settlements, as shall be agreed. And the said first parties do hereby covenant, to and with the said second parties, that said property is free from any incumbrance made or suffered by them, or any of them, excepting the deed of trust, or mortgage, executed by said Forsyth to C. K. Foote, Leroy Brewer, and A. Proskauer, trustees. And it is agreed that said company shall not lose or forfeit any lien or right that it may have secured, to have the said judgment satisfied by a sale under *venditioni exponas*, or execution, of said property hereby sold and transferred, or of any other property; and it is agreed that the said sale may be adjourned, from time to time, at the instance of said company, or a new execution be sued out on its judgment, or both. And it is agreed, also, that until the re-purchase of said property by the first party, upon the above agreed terms, or until seven months after the date hereof, said judgment shall be and remain valid and effective for all purposes, as a subsisting security to said second party, for a complete and perfect title to said property herein conveyed, and for the undisturbed possession

thereof, for the said time mentioned, against any one claiming by, through, or under any of said parties, or in privity therewith, or by any one on account of any thing done or suffered by said parties, or either of them. In testimony whereof," &c. (Dated the 18th December, 1876, and signed by said Forsyth, Rapier, Hodgson, and the acting president of said company; with their respective seals annexed.)

At the time this contract was entered into, as the bill alleged, there were two mortgages on the property outstanding and uncancelled; one in favor of E. B. Lott as trustee, which the parties represented to be fully satisfied; and the other in favor of C. K. Foote, Leroy Brewer, and A. Proskauer, as trustees, on which it was represented that large payments had been paid, leaving only a small balance unpaid; and there was also a large amount of back taxes unpaid. Under this contract, complainant "received a formal transfer of the possession of said property," and one F. E. Stokes, who was in possession as special deputy of the sheriff, was constituted agent for complainant, "to hold and run said business in the dual capacity of agent and deputy-sheriff." So long as the said parties had a right, by the terms of said contract, to re-purchase the property, complainant interfered but little in the management of it, having confidence in said Stokes, its agent; and soon after the right to re-purchase had become extinguished by the lapse of time, when complainant was preparing to take the active management and control of the property, Rapier addressed a communication to an officer of said company, suggesting that the complainant's judgment, bill of sale for the property, etc., were collusive and fraudulent as against the other creditors of Forsyth & Rapier; and on consultation with their attorney, to whom Rapier referred the complainant, the attorney threatened that "they would repudiate the whole transaction, and put the property into the court of bankruptcy," unless complainant would accept a proposition which he then made, and denied that the property had ever been delivered to complainant; and Stokes, combining with them, denied the authority and possession of complainant, and refused to surrender the property. Complainant thereupon caused an *alias* execution to be issued on its judgment, which was levied on the property on the 3d February, 1877. Before the sale of the property under this levy, Foote and the other trustees in the mortgage or deed of trust mentioned in the written contract or assignment to complainant, at the instigation of Rapier, Forsyth and Hodgson, as the bill alleged, claimed said property as the mortgagees thereof, and filed a claim and bond with the sheriff, who thereupon delivered the property to said John L Rapier

[Rapier v. Gulf City Paper Company.]

& Co., and made due return of the facts; and the property was in the possession of said Rapier & Co. when the bill was filed. A claim was also filed in the name of Mrs. Mary A. Fitzgerald, for $2,500, "under a pretended assignment of the rent of the *Register* building, claiming the payment of said sum to her from the proceeds of sale"; and the bill alleged that this claim "was fictitious, or was collusively made after the said bill of sale and levy, and could have no effect against the complainant's rights in said building and *Register* property, acquired as aforesaid," and was made at the instigation of Rapier. A written claim was also filed with the sheriff, in the name of said Rapier as tenant in possession, "demanding a release of the levy on the engine, boiler, and all the machinery and furniture of said *Register* newspaper, on the alleged ground that the same was part of the realty, and that the legal title thereto was in Mrs. Caroline Roper"; and the bill alleged, in reference to this claim, "that said building, in which said property was erected and placed, was the property of said Rapier, except in so far as the same, and the use thereof, had been vested in complainant as in this bill is fully shown; the said Rapier claiming at the time the equity of redemption, and the possession of said building, the said Mrs. Roper being the mortgagee only; and complainant charges that the said property, so claimed as realty, was not such in fact, and had never been so regarded by the owners of said building, nor by the owners of said property," and that it was a part of the property conveyed to the complainant. A bill in equity was also filed, at the instance of said Rapier, in the name of certain unsecured creditors of Forsyth & Rapier, against the complainant in this suit and the other parties in interest, asking to have the said conveyance to complainant declared a general assignment, and held to enure to the benefit of all the creditors equally; and the sole object of this bill, it was charged, was to embarrass and obstruct the complainant in the assertion of its legal rights.

"The building in which said *Register* property is placed and erected," the bill alleged, "and in which said printing and publishing business had been conducted, and which was generally known as the *Register* building, was formerly the property of said Rapier; and the use thereof, as complainant is informed and believes, and so charges, was put into said establishment for the use of said newspaper business, and the said building was refitted and remodelled therefor; and the said use of said building was one of the rights, privileges and contracts, transferred to complainant in said bill of sale." It was alleged, also, that after the accrual of the complainant's rights under the bill of sale, as it is termed, or conveyance

above set out, Rapier executed a deed conveying the same property to said F. E. Stokes; and this deed, also, was charged to be collusive and fraudulent, and a cloud on the complainant's rights. "And complainant further shows that the said newspaper property is now in the possession of said Rapier, Hodgson, and Stokes, they acquiring and holding possession thereof as aforesaid; that said property, by wear and tear of machinery and types, is becoming each day less valuable; that owing to the litigation and complications affecting said newspaper as aforesaid, and pecuniary embarrassments of the parties in possession, the said paper is not being conducted as it should be, and its good-will, name and reputation, which is a valuable portion of said property, is becoming thereby less valuable; that the said parties in possession are using the same for their own benefit and profit, and have been and are collecting all the revenue, and are hostile to complainant in the premises, wholly disregarding its rights, and have endeavored to cloud its title," etc.; "that the said building was re-modelled for, and the boilers, engine and machinery were placed therein at great expense, and especially adapted to the said building; that the said property conveyed to complainant is chiefly valuable as an entire establishment, including therein all of the materials and machinery for conducting the publishing, printing, and book-binding business, the use of the building, the membership of the newspaper in the 'Press Association,' and the right to the press dispatches, the name and good-will of the newspaper, its subscription list, etc.; and the said property should be kept as a going concern, fulfilling its contracts of subscription and advertising, to preserve its value;" and hence a receiver should be appointed. The mortgage to Mrs. Roper, it was alleged, was given for the unpaid purchase-money of the lot and building, amounting to $10,000, which was the full value of the property; but the interest had been regularly paid, and the mortgagee had made no effort to foreclose her mortgage; and the complainant claimed the right to have an account of the mortgage debt taken, and to be let in to redeem.

All the persons above named were made defendants to the bill. The bill prayed the appointment of a receiver to take possession and control of the property, "and manage it as a going concern," until the final disposition of the cause; that the complainant be declared to have a subsisting right and title to the property, subject only to the two mortgages named, in favor of Mrs. Roper and said C. K. Foote and others as trustees, respectively; that an account be taken of each of these mortgage debts; that Foote and his co-trustees

[Rapier v. Gulf City Paper Company.]

be charged as mortgagees in possession since the 6th March, 1877; that the complainant be allowed to redeem from Mrs. Roper, on paying the amount ascertained to be due to her; that the mortgage to Lott be declared satisfied, and cancelled; that the transfer or deed to Stokes be declared void, or held to be subordinate to complainant's right to use the building for the purpose of carrying on the business as before; that Rapier, Hodgson and Stokes be made to account for all profits realized, and moneys collected by them, from the business, since the 18th December, 1876; that they be enjoined from collecting any of the outstanding notes and accounts, and from establishing a rival newspaper; that the claim of Mrs. Fitzgerald be declared invalid; and for other and further relief, as the nature of the case may demand.

Rapier filed a demurrer to the bill, assigning specially nine grounds of demurrer. The first, second, third, and fourth assignments, each, deny that the complainant shows any ground of relief in reference to the building, and lot on which it is situated, since it has no interest in said real estate, either under the levy of the execution, or under the conveyance which is the basis of its asserted rights. The fifth assignment is, that the bill of sale, or conveyance to the complainant, when taken in connection with the facts stated in the bill, is a conveyance of all the property belonging to the grantors, to the exclusion of all their creditors not named therein, in violation of the statute of frauds; and therefore the complainant can not ask the aid of a court of equity to enforce its rights, if any, under such conveyance. The sixth assignment denies that any cause is shown for the appointment of a receiver of the property, since the trustees have given bond to have it forthcoming to answer any judgment that may be rendered on the trial of the claim suit. The seventh is, that the complainant has an adequate remedy at law; and the eighth and ninth are, in substance, that the conveyance to complainant, if not a general assignment, is only a mortgage, and not a conditional sale; and that the complainant can have no relief as mortgagee, under a bill framed on the idea of an absolute title.

Rapier also filed a plea in bar, on account of the pendency of another suit, as follows: "For answer to the whole bill, this defendant saith, that on the 8th March, 1877, Eliza S. Taylor, Mary Ann Fitzgerald, and others, in behalf of themselves and all other parties or creditors of the said firm of Forsyth & Rapier who desire to make themselves parties thereto, filed in this court, as the records will show, their bill of complaint against John Forsyth, John L. Rapier, Joseph Hodgson, this complainant, and Leroy Brewer, Charles K.

Foote, and Adolph Proskauer, trustees particularly described in this bill of complaint. The nature, character, and objects of said bill, and the relief prayed by it, is as follows: Said complainants allege that they are creditors of said firm of Forsyth & Rapier, and of their successors, as is also the said Gulf City Paper Company, the complainant in this suit; and that they were all alike entitled to be paid out of the property and assets of the said firm, employed in said business, and consisting of certain specific property, particularly described, as constituting all of the firm property and assets; that said corporation, this complainant, obtained a judgment on their said claim against said firm, and also an execution thereon, by means whereof, and also by means of hopes held out to this defendant and associates, induced them to execute to said complainant an assignment, or bill of sale, which purports to convey to said corporation every vestige of property and assets belonging to said firm, to the entire exclusion of every other creditor of said firm. Said bill of sale is annexed to said former bill as an exhibit, and is the basis of its whole subject-matter. Said first bill further alleges, also, that said bill of sale is in violation of the statute of frauds, and is in violation of their rights, and is in law a general assignment, which must enure to the benefit of all the creditors of said firm equally; and the prayer of said bill is, that the court will declare said bill of sale to be a general assignment, so that all the creditors of said firm may participate in it equally with said corporation. This second bill is filed by said corporation, against the legal representative (when appointed) of said John Forsyth, John L. Rapier, Joseph Hodgson, Mary A. Fitzgerald, Charles K. Foote, Leroy Brewer, and A. Proskauer, trustees; and also against Henry St. Paul, E. B. Lott, Caroline Roper, and F. E. Stokes, who are not parties to the first suit, but who are shown, by the allegations of the bill, to be either entirely immaterial, or only incidentally connected with its subject-matter; and the said creditors, who are assailing the title of said corporation in the first suit, are entirely omitted in said second suit. This defendant further avers, that so far as the subject-matter of this second bill is concerned, the whole basis of claim, title or right, which said corporation sets up against him or his co-defendants, and the only title he prays this court to enforce, is the same certain bill of sale, which, with the rights and remedies flowing from it, constitutes the subject-matter of both suits; and that both of these said suits are substantially between the same parties; and the issue to be joined in the first suit is upon the character and effect of said bill of sale, and the issue in this second suit is upon the character and effect of this ident-

ical instrument, and the proceedings in both cases are to the same end; and said first bill is still pending and undetermined," &c.

The chancellor overruled the plea and demurrer; from which decree the defendant Rapier now appeals, and here assigns it as error. The case was decided in May, 1879, but has never been reported; and the opinion has but recently come into the hands of the Reporter.

HANNIS TAYLOR, for appellant.

GAYLORD B. CLARK, contra. (No briefs on file.)

BRICKELL, C. J.—The rule of pleading in equity, as at law, can not be doubted, that the plaintiff must show an actual existing interest in the subject-matter of the suit, giving him the right to sue concerning it. The rule is stated with precision by CHILTON, J., in *McKinley v. Irvine*, 13 Ala. 693: "The complainant must show, by his allegations in the bill, that he is entitled to the relief which he seeks; and if he fails to set forth every essential fact necessary to make out his title to maintain the bill, the defect will be fatal." A bill which does not show that the complainant has an interest in the subject-matter of the suit, and a proper title to institute the particular suit concerning it, is subject to demurrer.—1 Dan. Ch. Pr. 314.

A material purpose of the present bill is the redemption, from a mortgage to Mrs. Roper, of the real estate described, and averred to be the individual property of John L. Rapier, which has been and is used and occupied as the place of business, and on which the materials, presses and fixtures, of the printing establishment, known as the "Mobile Register," are situate. "No person can come into a court of equity, for a redemption of a mortgage, but he who is entitled to the legal estate of the mortgagor, or claims a subsisting interest under him."—2 Jones on Mort. § 1055; *Grant v. Duane*, 9 Johns. 591. It is as assignee that the complainant, now the appellee, claims to be let in to redeem; and the instrument under which the right is deduced, is exhibited; and its terms, the circumstances surrounding the parties when it was executed, and all existing facts which may be looked to in construing them, it must be assumed, are fully stated, so far as reliance upon them is intended. Pleadings are construed most strongly against the pleader, and the only intendment made is, that he has stated the facts as favorably for himself as they will allow.

The instrument does not, in express terms, transfer any

right or interest in or to the real estate, nor is it expressly referred to. All its words are of the transfer of personal property only—" the property known and described as the *Mobile Daily and Weekly Register* newspaper, and all the property and materials in and belonging to the printing establishment thereof, and of the job-printing and book-binding establishment, and of the offices connected therewith, with the rights, contracts and privileges attaching thereto, and including and embracing the property mortgaged," &c. The mortgages referred to were executed by Forsyth, and Rapier is not a party to them, nor is this real estate embraced in them. The theory of the bill is, not that the real estate was transferred, but that it had been appropriated to the use of the business of the " *Mobile Daily and Weekly Register*," and *the use* was one of the *rights, privileges and contracts* transferred. It is not averred that, by contract, Rapier had transferred *the use* to the firm of which he was a member ; nor is it averred that there was any lease, for any definite term, to the firm. The building had been adapted to the use of this establishment, and when the establishment was transferred, the use passed as an incident to the transfer, is the idea which seems to underlie the proposition asserted by the appellee. If such be the result, it can scarcely be supposed to have been within the contemplation of Rapier, when he devoted his individual property to the uses of a business conducted by a partnership of which he was a member. Promoting the interests of the partnership, was a promotion of his own interest ; and so long as he could derive profit, he may have intended to appropriate his individual property to its uses. The limit of the term of the appropriation is, of necessity, no other being expressed, the existence of the partnership, and the application to its uses of the thing appropriated. When the partnership ceases, the right to the use ceases with it ; and there is no right, during the continuance of the partnership, to apply the thing to any other than to partnership uses. A lease to a partnership, during its existence, is terminated by its dissolution, and the lessor may re-enter. " The house," said Lord Ellenborough, " was to be used and occupied by the partners, during the partnership only, and when that was determined, there was an end of the tenancy."—*Waitheman v. Miles*, 1 Stark. 181. And where one partner let to the partnership a house for the carrying on of the business of the firm, on the dissolution of the partnership the lease terminated.—*Colnaghi v. Black*, 8 Carr. & Payne, 464. The lease could not be extended beyond the term necessary for the uses which entered into the consideration, and was the moving cause for making them.

The intention of the parties, when they keep within the pale of the law, guides and determines the construction of their contracts, express or implied, and fixes the character of their conduct. The devotion by a partner of his individual property to the uses of the partnership, may be intended to pass from him the entire title, or it may be intended as an appropriation of the mere *usufruct*,—the right to the profit, utility and advantage, it may yield the partnership during its continuance,—the title remaining in him. The *usufruct* may be appropriated for a particular term, or it may be intended to continue only during the existence of the partnership. If it is not expressly transferred for a particular term—if it is in the nature of a contribution to the partnership—it stands upon the same ground of a contribution of the partner's skill and industry, continuing only during the continuance of the partnership. Admitting the bill avers an appropriation of this property to the uses of the partnership, construing the averment according to its natural import, the use was for the advantage of the partnership,—continued and terminated with it, and is not a right, contract, or privilege, incident or attaching to the personal property transferred to the appellee. The terms of the instrument of assignment do not admit of, but are inconsistent with, a construction that it was intended to pass an interest in the real estate, or any other than the personal property, the materials, presses, and fixtures which made up the printing and publishing establishment, which were subject to execution, and which being sold under execution, the sale would be absolute, indefeasible, leaving to the defendants in execution *no legal right of redemption*. Such are its express terms; and they exclude any supposition, or construction, that it was intended to pass any interest in real estate, which, if vendible under execution, would be subject for two years to a *legal right of redemption*, by the defendant in execution, or any of his judgment creditors.

A judgment creditor of a mortgagor may be let in to redeem; but it is enough to say, if the appellee stands in that relation, the present bill is not so framed, and has not the necessary allegations to entitle it to that relief, in reference to the real estate. The whole right, as asserted by the bill, is deduced from the assignment.

The fifth ground of demurrer was properly overruled. It is founded in a misconception of the statute (Code of 1876, § 2126). A general assignment by a debtor is not prohibited—it is not declared void. The only effect of the statute is in its operation, depriving it of the character of a particular security for a particular creditor, and converting it into a general security for the equal benefit of all creditors who

come in and claim under it.   As between the parties, it operates according to its terms.   Creditors not named in it, or those who have not assented to it, alone have the right to claim that it shall enure to the benefit of all the creditors. *Holt v. Bancroft,* 30 Ala. 193 ; *Price v. Mazange,* 31 Ala. 701. The assignee may enforce any and every right which springs out of it, against the assignor and all claiming under him. He will, however, stand, at the election of creditors, a trustee for their benefit, bound to appropriate whatever he may realize to the payment of all the just debts of the assignor.   The instruments on which the statute operates, are transfers for the security of one or more creditors, to the exclusion of, or in preference to the remaining creditors ; and an indispensable element is, that substantially all the property of the grantor, subject to the payment of debts, is thereby conveyed. *Warren v. Lee,* 32 Ala. 440 ; *Stetson v. Miller,* 36 Ala. 642 ; *Longmire v. Goode,* 38 Ala. 577.   Whether this instrument covers substantially all the property of the makers, depends on facts not shown in the present bill, and the existence of which we are not authorized to presume.   Whether it can, under any state of facts, be declared a general assignment, is not a question Rapier can raise.   The creditors who are excluded, alone have rights or interests affected by it, if that is its character,, and they only can ask the interference of the court so to declare it.

When personal property is seized under legal process, and a third person interposes a claim to it, giving bond for its forthcoming, the property is regarded as in the custody of the law, until the claim suit is determined.—*McLemore v. Benbow,* 19 Ala. 76 ; *Kemp v. Buckey,* 7 Ala. 138 ; *Rives v. Welborn,* 6 Ala. 45.   There can scarcely arise a necessity for the appointment of a receiver by the Court of Chancery, at the instance of the party issuing the process under which the property is seized.   The bond the claimant is required to execute, is, in penalty, double the value of the property.   On the trial, the value of the property is ascertained by the verdict of the jury, if the claimant is unsuccessful ; and execution may issue against all the obligors, for the value thus ascertained, or the amount of the plaintiff's judgment, if it does not equal the value.   The insufficiency of the bond, in penalty, or in surety, may be at any time corrected, on motion to the court in which the claim suit is pending.   It is difficult, therefore, to conceive of the existence of a necessity for the appointment of a receiver, withdrawing the property from the custody of a court of competent jusrisdiction, and transmitting it to another court.

Not only is this property shown to have been in the custody

of another court of competent jurisdiction, drawn there by the levy of the execution of the appellee; but there is no averment that any right of the appellee, as a judgment creditor, is imperilled. The solvency of the claimants, or that of their sureties, is not disputed, nor is the sufficiency of the bond which they have given. The claimants were prior mortgagees. The amount of the debt secured by the mortgage is, it appears from the bill, controverted, but not the fact that there is an unpaid balance of it. The lien of the execution, and the assignment to the appellee, are subsequent in point of time, and subordinate to the mortgage. The assignment is expressly made in subordination to it. Having given the bond for the forthcoming of the property in the claim suit, the mortgagees have, in legal contemplation, the possession, which should not be disturbed by the appointment of a receiver.—High on Receivers, §§ 679-80. There is nothing in the nature of this property, nor in the supposed necessity of making sale of it as a "*going concern*" (as it is expressed in the bill), which can withdraw the case from the general principle, that a mortgagee in possession will not be dispossessed by the appointment of a receiver. The sixth ground of demurrer, addressed to so much of the bill as seeks the appointment of a receiver, was well taken.

The object of the bill, when separated from a redemption of the real estate, is the adjustment of the liens on the personal property, and a sale of it as an entirety, to satisfy them. The priority of the mortgage to Brewer and others, to the claim of the appellee, whether the appellee stands in the relation of an execution creditor, or of a subsequent mortgagee, or of a purchaser from the mortgagors, is admitted. That a court of law cannot make the adjustment and order a sale, transferring the several liens and claims from the property to the proceeds of sale, determining the respective rights and liabilities of the parties, is manifest. Whether the appellee can, in consequence of the transactions with the mortgagors, retain its relation as a judgment creditor, or whether it must stand as a purchaser, or a subsequent mortgagee, is not, in the present aspect of the case, material to determine. Its rights as against Rapier (and it is the demurrer interposed by him, to which we are confined on this appeal), are not materially variant, whether viewed as a judgment creditor, a subsequent mortgagee, or a purchaser. The argument in support of the demurrer is, however, that the complainant has averred that it stands as a purchaser, while its real relation is that of a mortgagee; the transaction with the mortgagors, in the light of the facts stated, though in form a sale, being, in the contemplation of a court of equity, a mortgage. The

appellee does claim as a purchaser; but the facts are all stated in the bill, and if his real relation is that of a mortgagee, he is mistaken only in the conclusion he has drawn from the facts. The mistake cannot vary the relief to which he is entitled, and does not render the bill demurrable. The seventh, eighth, and ninth grounds of demurrer were not well taken.

The plea was properly overruled. The appellee could not, in the former suit, have obtained any relief, without the exhibition of a cross-bill. If that had been exhibited, the complainants could have dismissed the original bill; the cross-bill would have fallen with the dismissal, and the appellee be driven to the institution of an original suit. The former suit is by different complainants, founded on different rights, antagonistic to that of the appellee; was in its nature incapable of affording the appellee the full relief to which it may be entitled, and could not operate as a bar to the present bill.

For the errors noticed, the decree must be reversed, and the cause remanded.