# Du Bose *et al.* *v.* Carlisle *et al.*

*Bill in Equity to establish Trust in Lands, or to have Deed of Trust by Debtor declared General Assignment for Creditors*

1. *General assignment; what constitutes.* — *Held*, on the authority of *Longmire* v. *Goode & Ulrick* (38 Ala. 577), that a deed of trust, executed by an insolvent debtor, for the benefit of certain preferred creditors, conveying his whole estate (about $20,000 in value), with the exception of some perishable personal property (about $2,000 in value), and a tract of land under mortgage for the purchase-money, will be deemed in equity a general assignment (Rev. Code, § 1867), enuring to the benefit of all his creditors equally.

2. *Construction of trust deeds, as to powers and duties of trustee, and interest and liability of husband in and for surplus profits.* — A deed of gift, executed in South Carolina prior to 1860, conveying about thirty slaves to a trustee, in trust that he would " allow the said K. C. D.," the husband of a married woman, who was the daughter (or, in another case, a near relative) of the grantor, " to possess the said slaves, their issue, and increase, and to take the profits of their labor, for the maintenance of himself and family, during the life of the said Elizabeth," his wife, " or so long as he is willing to remain and keep them in said State ; " if the wife survived her husband, the trust was to cease, and she was to have the absolute estate ; if he survived her, the trust was to continue as before, until each child attained majority, when he or she was entitled to receive a proportionate share of the property according to the number of the children ; and if the husband should die before his wife, or remove from South Carolina, then the trustee " may sell " the said slaves, " or any part thereof, as he may think best," except the house ser-

[Du Bose v. Carlisle.]

vants, which the said Elizabeth may reserve and take with her," and invest the proceeds of such sale in any manner he may think best, for the benefit of the said Elizabeth and her children, — *held*, 1st, not to require the trustee to dispossess the husband of the property, on his removal from South Carolina; 2d, nor to render either the trustee or the husband liable to a strict account of the profits of the property and the expenses of the family, or responsible for any excess of profits over expenses.

3. *Surplus profits of trust property; reinvestment in other property.* — Where slaves were conveyed to a trustee, by deed of gift, for the use and benefit of a married man and his wife and children, with an enlarged discretion to the trustee and the husband in the matter of household expenses, and without strict accountability for the surplus profits; the children may, nevertheless, establish a trust in the surplus profits invested by the husband in real estate; but the profits must be clearly identified, and distinctly traced into the designated lands.

APPEAL from the Chancery Court of Perry.

Heard before the Hon. A. W. DILLARD.

The bill in this case was filed by John W. Du Bose and others, children of Kimbro C. Du Bose and Elizabeth Du Bose, his wife, against Carlisle, Smith & Co., E. K. Carlisle, and others; and sought to establish a trust in favor of the complainants in certain lands, which their father, the said K. C. Du Bose, had bought in his own name, and had afterwards conveyed by deed of trust to W. E. Clarke, as trustee, for the benefit and security of said Carlisle, Smith & Co.; or to have the said deed of trust to Clarke as trustee declared a general assignment, enuring to the benefit of all the creditors of the grantor equally. On final hearing, on pleadings and proof, the chancellor dismissed the bill, on the ground that the complainants were not general creditors of K. C. Du Bose, and did not show any specific trust in the lands which they sought to subject; and his decree is now assigned as error.

MORGAN, LAPSLEY & NELSON, for appellants.

BROOKS, HARALSON & ROY, *contra*.

B. F. SAFFOLD, J. — The bill, filed by the appellants, sought to have specified lands declared subject to a trust in their favor, or to have a certain deed of trust, by which the said lands were conveyed for the benefit of the appellees, as creditors, decreed a general assignment of the grantor, for the benefit of all his creditors. It was dismissed, on the ground that the complainants were neither *cestuis que trust* of the lands, nor general creditors of the grantor.

The lands, about 970 acres, were bought by Kimbro C. Du Bose, between 1850 and 1852, for himself, the titles being taken in his own name. With the exception of one tract of eighty acres, the purchase was upon credit. The purchase-money was subsequently paid directly by Du Bose's commission-merchants, to whom he sent his crops of cotton, his sole

source of revenue, for repayment. The appellees, Carlisle, Smith & Co., were his commission-merchants in 1866, when he made the deed of trust referred to, to Wm. E. Clarke, to secure the payment of over forty thousand dollars, which, by their calculation, he was found to owe them. This indebtedness was involved in transactions of principal and factor and commission-merchant, commencing with John A. Winston & Co. in 1853, and continuing to 1859, when Winston & Co.'s account against Du Bose was transferred to Carlisle, Smith & Co.; and thence with the latter, to the date of the trust deed. The lands, and some personalty included, were sold by the trustee, Clarke, in December, 1867, and were purchased by Carlisle, Smith & Co. An action of ejectment by these purchasers is now pending against the appellants in possession, for the recovery of the lands. Since the commencement of that suit, but before the institution of this, E. R. Carlisle, Jr. claimed to be a purchaser from the vendees of the trust sale, and he is made a defendant by amendment of the bill.

1. The complainants charge, that the deed of trust conveyed substantially all of the grantor's property subject to legal process, and is a general assignment under R. C. § 1867. This seems to be so, under the construction of the section given in *Longmire* v. *Goode & Ulrick*, 38 Ala. 577. For, with the exception of the "Syd. Bodie place," about five hundred and sixty acres, under mortgage for about $7,500, K. C. Du Bose is not shown to have owned other property, beyond his claim of exemption, exceeding two or three thousand dollars. It was of the most perishable character, consisting of work animals, farming utensils, a few cattle, some corn, and the like, the most of which was intended for immediate consumption. The property conveyed by the deed was at least $20,000 in value.

Unless, however, the complainants are general creditors of K. C. Du Bose, this branch of the case need not be further investigated, nor any inquiry made into the right of E. K. Carlisle, Jr. to be regarded as an innocent purchaser without notice. They say, that there were surplus profits of some slaves, given to trustees for their benefit, which were invested in these lands by K. C. Du Bose, with a knowledge of their rights; or that he is indebted to them in the amount of such profits.

2. While K. C. Du Bose and his wife and children were resident citizens of South Carolina, J. D. Witherspoon, the father of Mrs. Du Bose, and John N. Williams, a near relative of hers, also citizens of that State, severally, and independently of each other, executed two deeds, whereby they conveyed, — the first, thirty-three slaves, and the other, twenty-nine slaves, — in trust that the trustee named would " allow the said Kimbro

C. Du Bose to possess the said slaves, their issue, and increase, and to take the profits of their labor, for the maintenance of himself and family, during the life of said Elizabeth B. Du Bose." If Mrs. Du Bose survived her husband, the trust was to cease, and she was to have the absolute estate. If he survived her, the trust was to continue as before, until as each child became of age, such one was to have a separable share of the property, in proportion to the number of them. The deed of Williams contained these further provisions: 1st, included in the above quotation, "so long as he (Du Bose) is willing to remain and keep them in said State;" 2d, concluding the deed, "if the said Kimbro C. Du Bose should die before his wife, or remove from the State (of South Carolina), then they (the trustees) may sell the same, or any part thereof, as they may think best, except the house servants, which said Elizabeth may reserve and take with her for her use, vesting the proceeds of such sale in any manner they may think best, for the benefit, maintenance, and education and support of said Elizabeth and her children." These deeds were recorded in Marengo county, Alabama, in 1850; and were executed in South Carolina, the first mentioned, in 1849, and the other in 1843. Du Bose had about thirty slaves of his own. In 1850, he and his family emigrated to Alabama, and all of their property was brought with them.

The *corpus* of the gifts was destroyed in 1865, by the emancipation of the slaves. Du Bose had, up to that time, possessed and controlled it, received its profits, and supported his family. The trustee might have dispossessed him of the property given by Williams, on account of his removal from South Carolina. He could not have done so of the other. It is plain that both deeds authorized the appropriation of all of the profits to the maintenance of the family, and the education of the children. The obligation of Du Bose to support his family was not brought into account, and no participation of his in the profits of the Williams property, in common with the other members of his family, was intended to be charged against him. No creditor of his could have assailed any interest in this property, except that portion of the profits of the Witherspoon donation appropriable to his support. *Rugely & Harrison* v. *Robinson*, 10 Ala. 702. No one of the beneficiaries acquired a separable interest in the *corpus* during its existence, but all had a present interest in its profits.

The provision in the Williams deed authorizing the trustee to sell the property, except the house servants, on the death of Du Bose, or his removal from South Carolina, and to reinvest it, taken in connection with the previous grant of the absolute estate to Mrs. Du Bose on the death of her husband,

[Milhous v. Aicardi.]

indicates the interpretation, that only a more manageable condition of the property was to be assumed, and not a greater responsibility cast on the trustee. The authority and discretion given to Du Bose forbids the accountability of the trustee for profits in excess of the maintenance of the family and the education of the children. The same, with the appointment of the trustee, precludes the liability of Du Bose as a trustee. The annual expenses of the family are said to have been about four or five thousand dollars. The value of the net hire of the slaves is computed at about the same. The probability is, that the expenses were greater, and the profits less, than estimated. Du Bose bought no large amount of property. How is it, then, that he got so enormously in debt? We think the deeds were not intended to charge him with surplus profits, and that the complainants are not his general creditors.

3. If, however, he had preserved any profits, and invested them in land, or other property, such investment would be subject to the deeds as principal. They are not otherwise given expressly, and there is no ground for a different implication. In order to establish such a trust, the profits, clearly identified, must be plainly traceable into accurately designated premises or property. The most that can be said in this case, in support of the trust, is, that the vendors of the land were paid the price, and the estimated profits of the property and expenses of the family were such as would have produced a surplus sufficient for the payment. On the other hand, the mass of debt accumulated against Du Bose forbids the belief that the profits of the trust property and his own were sufficient to buy these lands and support his family. The commission-merchants either supported his family, or paid for these lands. In either event, their equity would be greater than that of the complainants. *Goldsmith* v. *Stetson & Co.* 30 Ala. 164; *Maury* v. *Mason*, 8 Port. 211. The evidence is insufficient to establish a resulting trust.

The decree is affirmed.