# Danner & Co. v. Brewer & Co.

*Bill in Equity to have Mortgage declared a General Assignment.*

1. *Assignments; validity of prior to the Code.*—It was regarded as settled, that prior to the adoption of the Code, a debtor, though in failing circumstances, could convey the whole, or a part of his property by assignment or other form of conveyance operating as a security, to pay the whole or a part of his creditors in unequal proportions; and the only qualification to this right and power of the debtor was, that the uses must have been distinctly declared, and the property, in good faith and without the reservation of any benefit to the debtor, devoted to the payment of the prescribed debts.

2. *General assignment; § 2126 of the Code construed.*—Section 2126 of the Code of 1876 does not annul, as fraudulent, a general assignment creating preferences or priorities, but merely destroys such preferences or priorities; while the assignment is preserved, and enures to the benefit of all the grantor's creditors equally.

3. *Same; what operates as under the Code.*—Whatever may be the form of the instrument, if it is a transfer of substantially all the debtor's property which is subject to the payment of his debts, or, in its operation and effect, there is an appropriation of the property, for the security or payment of one or more of his creditors to the exclusion of all others, or a preference to one or more of them is thereby given, and if the property is redeemable on payment of the debts, or a trust results, expressly or by implication, to the debtor of any surplus which may remain after the debts are satisfied, the instrument falls within the statute, and thereby all preferences and priorities appointed by the instrument are annulled, and the assignment enures equally to the benefit of all the debtor's creditors.

4. *Same; when two or more instruments construed as.*—While a conveyance or transfer of a part of the debtor's property for the security of debts, is a *partial*, not a *general* assignment, and, therefore, not within

the operation of the statute; yet, if, when the partial assignment is executed, other and successive transfers or conveyances are contemplated, covering all the debtor's property, the several instruments, when executed, will be taken together, and will form a general assignment, upon which the statute will operate.

5. *Same; an absolute sale does not operate as.*—A sale, absolute, unconditional, and free from all reservation, in payment of antecedent debts, is not a general assignment, and is not affected by the provisions of section 2126 of the Code of 1876.

6. *Same; when mortgage executed to secure new debt construed as.*—A mortgage executed by a debtor, conveying substantially all his property as security for pre-existing debts, which are extended contemporaneously with the execution of the mortgage, and also for advances which the mortgagee stipulated in the mortgage to make to the mortgagor, and which were afterwards made in pursuance of such stipulation, is a general assignment under the Code, and the security thereby created enures equally to the benefit of all the then existing creditors of the mortgagor.

7. *Same; rights of creditors thereunder not affected by subsequent acts of the parties.*—The rights of creditors secured by an assignment attach at the time of its execution, and can not be divested or affected by any subsequent acts of the assignee and assignor, had and done without notice to them, and without their assent.

8. *Same.*—When a mortgage with power of sale is executed by a debtor to secure one of his creditors, conveying substantially all his property, and thereby becoming a general assignment under the Code, and after the law-day, and upon default in the payment of the debt secured, the mortgagee, without executing the power of sale, enters into a new contract with the mortgagor, by which he becomes the purchaser of the mortgaged property, and the same is conveyed to him,—such contract of purchase and conveyance can not affect the rights of other creditors of the mortgagor, who under the provisions of the Code, are entitled equally with the mortgagor, to the security afforded by the mortgage.

9. *What creditors are secured by general assignment.*—A mortgage which becomes a general assignment under the influence of the Code, enures only to the benefit of creditors whose claims or demands were in existence at the time of its execution; and their rights can not be diminished by a claim of participation preferred by subsequent creditors.

10. *Real estate governed by the law rei sitæ.*—Real estate, as to its enjoyment and transmission, is governed by the law of the place where it is situated.

11. *Common law presumed in Mississippi.*—In the absence of proof, the presumption is that the common law prevails in Mississippi.

12 *Same; effect on mortgage of lands.*—Under this presumption it is held, that a mortgage, executed by a debtor in this State, to secure one of his creditors, and conveying substantially all his property, including lands in Mississippi, as to such lands, does not operate as a general assignment.

13. *Bill in equity; when averments too vague and uncertain.*—A creditor seeking to have a mortgage executed by his debtor declared a general assignment on the ground that it conveys substantially all the debtor's property, must show by his bill, that his debt existed at the time of the execution of the mortgage. An averment that "a large portion of the debt existed prior to" the date of the mortgage is too vague and uncertain to entitle him to participate in the security afforded by it.

APPEAL from Mobile Chancery Court.

Heard before Hon. JNO. A. FOSTER.

The bill in this case was filed on November 23d, 1881, by L. Brewer & Co., Haralson & Co., Wollner, Hirshberg & Co.,

[Danner & Co. v. Brewer & Co.]

T. Prudhomme and others, creditors of Garland M. Dees, against him, and A. C. Danner, George W. Robinson and Benjamin F. McMillan, partners trading under the firm name of A. C. Danner & Co., for the purpose of having a certain mortgage and deed executed by Dees to Danner & Co. declared a general assignment.

The case made by the bill, so far as passed on by the court, is as follows: On 18th February, 1880, Garland M. Dees executed to A. C. Danner & Co. a mortgage, whereby he conveyed to them a large amount of real and personal property in Alabama, and also a large tract of land located in the State of Mississippi. A copy of the mortgage, as an exhibit, is made a part of the bill; and its recitals show, that it was executed "for and in consideration that the said Garland M. Dees is indebted to the mercantile firm of A. C. Danner & Company, on their book account, at this date amounting to about the sum of ten thousand dollars, and in the further consideration, that the said firm has this day agreed and bound themselves in writing, among other things, to aid the said Dees in his general business, in extending the said amount now due, as hereinafter specified, and in addition thereto, to advance, accept, endorse for, or pay cash for him, the said Dees, as he may need the same, to the sum of three thousand dollars, in addition to the said sum now due, making a line of credit in all not exceeding the sum of thirteen thousand dollars, which said indebtedness is to be paid as hereinafter expressed," and as and for a security for said indebtedness and advances. The defeasance contained in the mortgage provides, that the mortgage is made "upon the condition, however, that if the said Garland M. Dees shall pay or cause to be paid the said indebtedness with interest and commissions for advancing, as per agreement this day made, that is to say, that said indebtedness is to be paid by payments of one thousand dollars monthly, until all of said indebtedness is paid, the first payment to be made on or before the 1st day of May next, and a like payment of one thousand dollars on the 1st day of each succeeding month thereafter, until full payment is made—Now, if said payments are well and truly made as agreed, then and in that case this conveyance is to be and become null and void." Then follows a power of sale, by which the mortgagees are empowered, upon the failure by Dees, to make any one of the stipulated monthly payments, to sell the property at public outcry, after having first given twenty days' notice of the time, place and terms of sale, by publication in some newspaper published in the city of Mobile. It is also provided in the mortgage, that any surplus of the proceeds of sale left after paying expenses, and the indebtedness secured, should be paid over to Dees. The bill avers, that this mortgage conveyed "all the

13

property then owned by said G. M. Dees, that could be reached by an execution at law from a court against said Dees, and that it was made to secure past indebtedness and for advances to be made to him in future, and is, therefore, a general assignment for the benefit of all his creditors at the time said mortgage was made." On the 14th July, 1881, Garland M. Dees and his wife executed to A. C. Danner & Co. an absolute deed, thereby conveying to them in fee the property conveyed by said mortgage, and also some other property alleged in the deed to have been purchased by Dees with funds obtained from Danner & Co. A copy of this deed is also made an exhibit to the bill. The consideration of the deed, as recited therein, was the release of Dees by Danner & Co. from the debts and liabilities secured by the mortgage, and also from other debts which he owed them, and an agreement on the part of Danner & Co. to pay off and discharge certain debts therein described, which Dees owed to other parties, and to surrender to him certain notes made by one M. A. Dees, and a mortgage securing the same, which were then held by Danner & Co. as additional security for the payment of their claims against Garland M. Dees. The bill avers, that this deed covered all the property owned by said Garland M. Dees at the time of the execution thereof "that could be reached by an execution at law against said G. M. Dees," and that it was a general assignment for the benefit of all the creditors of said Dees.

It is also shown by the averments of the bill, that the debts which Garland M. Dees owed to J. Prudhomme and Wollner, Hirshberg & Co., respectively, existed prior to the date of the execution of the mortgage of February 18th, 1880. The averment of the bill describing the debt of Haralson & Co. is as follows: "Your orators, Haralson & Co., show that Garland M. Dees was indebted to orators in the sum of four hundred and fifty-seven 92-100 dollars, a large portion of the same existed prior to the 18th day of February, 1880, and that said sum of money is justly due, with interest thereon." It is also shown by the averments of the bill, that the debts due from the said Dees to L. Brewer & Co. and the other complainants, respectively, existed prior to the execution of the deed of July 14th, 1881; but it is not shown that said debts existed at the time of the execution of the mortgage of February 18th, 1880.

The defendants, A. C. Danner & Co., demurred to the bill, and assigned, among others, the following grounds: 1. That creditors of said Dees, whose debts existed prior to the execution of the mortgage of February 18th, 1880, are united, as parties complainant, with creditors of said Dees, whose debts are not shown to have existed at the time of the execution of

[Danner & Co. v. Brewer & Co.]

said mortgage.  2.  That it appears in and by said bill, and the exhibits thereto, that A. C. Danner & Co. were mortgagees for present value, when they took and received from said Dees their said mortgage of February 18th, 1880; and that said deed of July 14th, 1881, was executed, not as an assignment for the use of creditors, but as an absolute conveyance, in payment of certain debts in said deed described, such payment being the consideration of said deed.  Said defendants also demurred to so much of the bill as sought "relief against, or on account of the conveyance of the lands in the State of Mississippi, or to subject them or the proceeds thereof, in this proceeding," on the ground, that the court was without jurisdiction in this cause to declare the conveyance thereof a general assignment.

The cause was submitted for decree on the demurrer; and on the hearing thereof, the Chancery Court rendered a decree overruling the demurrer; and from this decree Danner & Co. appealed, and here assign the same as error.

H. PILLANS, for appellant.—(1). Creditors whose debts existed prior to the execution of the mortgage of February 18th, 1880, are joined as parties complainant with creditors whose debts were contracted after the execution of the mortgage, all seeking to have it declared a general assignment.  For this reason the bill is multifarious.  (2).  The demurrer should have been sustained to so much of the bill as attacks the validity of the conveyance of the Mississippi lands.—*Lide v. Parker*, 60 Ala. 165.  (3).  It is well settled that the deed of July 14, 1881, can not be declared a general assignment.—*Eskridge v. Abraham*, 61 Ala. 134; *Seaman v. Nolen*, 68 Ala. 463; *Crawford v. Kirksey*, 55 Ala. 282; *Young v. Dumas*, 39 Ala. 60.  (4). The appellants were mortgagees for present valuable consideration.—*Thames v. Rembert*, 63 Ala. 572; *Thurman v. Stoddard*, 63 Ala. 336; *Robinson v. Tipton*, 31 Ala. 607; *Cook v. Parham & Blount*, 63 Ala. 456–460.  (5).  The mortgage to appellants, being for a present valuable consideration, did not operate as a general assignment.  (a).  "There are three points to be considered in the construction of all remedial statutes: the old law; the mischief; and the remedy. . . . And it is the business of the judges so to construe the act as to suppress the mischief, and advance the remedy."—1 Bl. Com. pp. 87, 61; *Blakeney v. Blakeney*, 6 Porter, 109–119; *Huffman v. The State*, 29 Ala. 40.  (b).  Prior to the statute a failing creditor, by general assignment of all his effects, might have preferred any creditor or creditors he chose.—*Richards v. Hazzard*, 1 S. & P. 139; *Stover v. Harrington*, 7 Ala. 153.  And, though he would have thereby exhausted his entire estate, he might have, nevertheless, lawfully stipulated that those who accepted the property

[Danner & Co. v. Brewer & Co.]

and released him, should receive preference of payment in full, to the exclusion of others, thus extorting releases.—*Robinson v. Rapelye*, 2 Stew. 86–100; *Ashurst v. Martin*, 9 Porter, 566; *Grimshaw v. Walker*, 12 Ala. 101; *West v. Snodgrass*, 17 Ala. 549; *Rankin v. Lodor*, 21 Ala. 380. These cases were invariably founded on *voluntary general assignments*, for *existing* unsecured creditors, and exhibited to the legislature and the profession a glaring evil; one regretted by the courts, and reluctantly legalized by their sanction, (see opinion of ORMOND, J., 4 Ala. pp. 379–81, quoting Judge Gaston's language in 1 Iredell, 490, and *per* KENT, Ch., in 3 John. Ch. 453), that is, the existence of a *lawful* power in an insolvent and hopeless debtor, to diminish and destroy the security that his possession of his estate had afforded all creditors who had dealt with him, by appropriating the whole of that estate to the preferred payment of creditors selected by him without regard to merit, capriciously, and even for the purpose of extorting from them a reluctant discharge as the price of such debtor's bounty. (*c*). The legislature provided for the correction of this evil—1st, by the adoption of the law of 21st January, 1850, now section 2125 of the Code of 1876, which cut off the trafficking by debtors in forced releases; and 2d, by the adoption of the Code of 1852, with section 1556 therein incorporated as a natural sequence to the law of 21st January, 1850 (numbered as section 1555 therein), and the classification of these laws under Art. I, "Of the prevention of frauds and perjuries;" of Chap. iv, "of void contracts." This section, 2126 of the Code of 1876 (1556 of the Code of 1852), used words of very usual and well known significance, which had been constantly used in cases cited, in the sense of instruments assigning everything to pay pre-existing creditors their debts, and had never been otherwise applied. The correction of the practice of making voluntary preferences in such instruments was the very evil struck at. Upon the canon of interpretation above written, then, we should, even were a more vague or looser expression used than "general assignment," confine the statutes to voluntary assignments of whatever form without present consideration, by the hopeless debtor for the benefit of his existing creditor or creditors, because that was the cure manifestly required On the other hand, the common transaction whereby a creditor, who needs ready money or present relief from pressing debt by obtaining extensions, *bona fide* secures such relief upon and by a mortgage executed contemporaneously, for such present value and consideration, so far from being disfavored, has ever been held by our courts to be such as entitled the mortgagee to stand in that most highly favored light of being regarded as a *bona fide* purchaser for value, against whom latent equities can never afford relief.—*Thames*

[Danner & Co. v. Brewer & Co.]

*v. Rembert*, 63 Ala. 561; *Thurman v. Stoddart, Ib.* 336; *Cook v. Parham, Ib.* 456; and older cases cited. (*d*). Mortgages for present valuable consideration have never been esteemed by the courts or the profession to be general assignments within the statute. Every case thereon which has come to this court has arisen upon transactions, wherein no element of new consideration passed at the execution of the instrument. They were merely cases of assignments as collateral to debts already existing.—*Holt v. Bancroft*, 30 Ala. 193; *Price v. Mazange*, 31 Ala. 701; *Warren v. Lee*, 32 Ala. 440; *Stetson v. Miller*, 36 Ala. 642; *Longmire v. Goode,*, 38 Ala. 577; *Rapier v. Gulf City Co.*, 64 Ala. 333. The case of *Shirley v. Teal*, 67 Ala. 449, furnishes the first exception, and if we may judge by the record in that case, the point here made was little urged upon the consideration of the court. (*e*) This legislation finds a parallel in the thirty-fifth section of the Bankrupt Act, forbidding and avoiding preferences given by insolvent debtors to any *creditor* by "payment, pledge, *assignment*, transfer or conveyance, of any part of his property absolutely or conditionally," etc. Under this section of the Bankrupt Act the very question under discussion arose, and the Federal Supreme Court unanimously held, that it in no wise affected or invalidated a mortgage made by the struggling debtor to obtain present aid.—*Tiffany v. Boatman's Inst.*, 18 Wall. 375. (6). If the mortgage is subject to be treated as a general assignment, the complainants delayed too long before manifesting an intention to elect to so treat it. They waited nearly two years before filing their bill, or signifying their intention to claim as beneficiaries, and until the appellants had released Dees of a demand of nearly $30,000, indeed of all demands whatever; and they now seek to displace the appellants and take all for themselves. The court will not grant relief in such case.—Story's Eq. Jur. § 1097; *Robinson v. Cullman & Co.*, 41 Ala. 693; *Frazer v. Lee*, 42 Ala. 25; *Calloway v. Gilmer*, 36 Ala. 358; *Andrew v. Hobson*, 23 Ala 236; *Reaves v. Garrett*, 34 Ala. 562.

BOYLES, FAITH & CLOUD, *contra.*—(No brief came to the hands of the reporter.)

BRICKELL, C. J.—Assignments for the benefit of creditors, their validity and operation prior to the adoption of the Code, have been the subject of much contention, and frequent judicial decision. It was regarded as settled that a debtor, though in failing circumstances, or involved, could convey the whole or a part of his property, by assignment, or by any form of conveyance or transfer, operating, or intended to operate as a security, to pay the whole or a part of his creditors in unequal

[Danner & Co. v. Brewer & Co.]

proportions; and the only qualification of the right and power of the debtor, was that the uses must have been distinctly declared, and without the reservation of any benefit to himself, the property must have been in good faith devoted and appropriated to the payment of the prescribed debts.—1 Brick. Dig. 128, §§ 75–8. The Code wrought, and was intended to work a radical change in the right and power of the debtor in the transfer of his property for the payment or security of his creditors. It was first provided that "every deed of trust, mortgage or other security hereafter made to secure any pre-existing debt, whether such debt is due or not, or absolute or conditional, is fraudulent and void as to the creditors of the grantor, when any creditor provided for thereby is required to make any release, or to do any other act, impairing his existing rights, before participating in, or receiving the securities therein provided for him."—Code of 1876, § 2125. This statute abrogated, and was intended to abrogate, the rule announced in an early decision of this court, and subsequently though reluctantly adhered to, that assignments, mortgages or deeds of trust, for the security of debts, were valid, though stipulating for the release of the debtor, as the condition on which the creditor could take the benefit of the security—in other words, making it a condition that the creditors should accept the provisions of the security in full satisfaction of their demands.—*Robinson v. Rapelye*, 2 Stew. 86; *Ashurst v. Martin*, 9 Port. 566; *Gazzam v. Poyntz*, 4 Ala. 374; *Grimshaw v. Walker*, 12 Ala. 101; *West v. Snodgrass*, 17 Ala. 549.

The preference of particular creditors by the debtor making a general assignment of his property, a conveyance or transfer of all or substantially all of his property, for the security or payment of debts, was also, as we have seen, recognized. The Code declared: "Every general assignment, made by a debtor, by which a preference or priority of payment is given to one or more creditors, over the remaining creditors of the grantor, shall be and enure to the benefit of all the creditors of the grantor equally."—Code of 1876, § 2126. The object and purpose of this section is unlike that of the preceding section. It does not annul as fraudulent a general assignment creating preferences or priorities, not exacting conditions from creditors claiming or accepting its provisions. The assignment is preserved, and it is declared that it "shall be and enure to the benefit of all the creditors of the grantor equally." The preferences or priorities are blotted out, are annulled, and the assignment is read, and effect given to it, as if the statute were incorporated into it—as if instead of the preference or priority, a security for the benefit of all creditors equally, was expressed.—*Price v. Mazange*, 31 Ala. 701; *Rapier v. Gulf*

[Danner & Co. v. Brewer & Co.]·

*City Paper Co.*, 64 Ala. 330. The purpose of the statute is to prohibit a debtor, making a transfer of substantially all of his property as a security for the payment of his debts, from discriminating between his creditors. Such transfers are but seldom, if ever made, except in the presence of actual insolvency, or under the pressure of apprehensions of it. If it is not an open confession of the debtor's inability to pay his debts fully, it is at least a confession that of it there is so much doubt, that it is necessary for the protection of the preferred creditor that security enuring to his exclusive benefit should be given. The policy of the statute is the promotion of equality among creditors—the withdrawal from the debtor of the power to make distinctions, giving preferences among them, a power often most capriciously exercised; and generally in favor of *confidential creditors*, as they are termed; creditors who have furnished the failing debtor with the means of obtaining credit to which he was not entitled, involving in loss the unsuspecting and fair dealing creditor.

The form or character of the instrument creating the preference or priority is not important. Whether it falls within the influence of the statute is not determined by the inquiry, whether it is technically an assignment, or a mortgage, or a deed of trust, or other form of security for the payment of debts. The statute is directed against substance, against things, not against forms or names. Whatever may be the form of the instrument, if it is a transfer of substantially all of the property of the debtor, subject to the payment of debts—if in its operation and effect according to its terms, there is an appropriation of the property for the security, or for the payment of one or more creditors to the exclusion of all others—or, giving preference or priority to one or more creditors—if the property is redeemable on payment of the debts—if by express terms, or by implication of law a trust results to the debtor of any surplus which may remain after satisfying the debts, the instrument falls within the statute, all preference or priority of payment or security appointed by it, by the intervention of the statute, is annulled, and it enures to the benefit of all creditors equally.—*Warren v. Lee*, 32 Ala. 440; *Longmire v. Goode*, 38 Ala. 577; *Perry Ins. and Trust Co. v. Foster*, 58 Ala. 502; *Rapier v. Gulf City Paper Co.*, 64 Ala. 344; *DuBose v. Carlisle*, 51 Ala. 590. The statute is intended to operate upon conveyances or transfers of *all* the debtor's property for the security of debts, as distinguished from a conveyance or transfer of parts of it for that purpose. The conveyance or transfer of all of the debtor's property having as an incident the redeemable quality, or from which a trust of the surplus remaining after the payment of the debts,

[Danner & Co. v. Brewer & Co.]

intended to be secured results, is within the purview of the statute, and a general assignment. A conveyance or transfer of a part of the debtor's property for the security of debts, is a *partial*, not a *general* assignment, and not within the operation of the statute. Yet, if when the partial assignment is executed, other and successive transfers or conveyances are contemplated, covering all the debtor's property, the several conveyances, when executed, will be taken together and will form a *general* assignment, upon which the statute will operate.—*Holt v. Bancroft*, 30 Ala. 93 ; Burrill on Assignments (3d Ed.) § 128.

An absolute sale, unconditional, free from all reservation, in payment or satisfaction of antecedent debts, is not within the statute.—*Crawford v. Kirksey*, 55 Ala. 382, S. C. 50 Ala. 590. Though sales are often denominated assignments, yet between them and the transactions to which the statute refers, there is a broad and manifest distinction. By a sale the vendor strips himself irrevocably and absolutely of all right, title and interest, present or future, in the subject-matter of the sale. There is no right of redemption remaining in him—no trust resulting to him in any event. An assignment, whatever may be its form, has these incidents and qualities. It is subject to the uses and trusts declared in it, and which must be distinctly declared, or it will be void as to creditors. The satisfaction or extinguishment of these uses and trusts results in a divesture of the title the assignment creates ; or results in a trust of the residue of the property or its proceeds, unappropriated after the satisfaction of the uses and trusts. The sale operates an immediate satisfaction of the debts taken in payment—the assignment does not of itself pay or satisfy debts ; it simply provides for, or secures payment.—Burrill on Assignments (3d Ed.), § 6 ; *York County Bank v. Carter*, 38 Penn. St. 446 ; *Johnson v. McGrew*, 11 Iowa, 151.

When a general assignment is executed, the operation of the statute is to engraft upon it, whatever may be its form, or its terms, a trust for the benefit of all creditors. The trust, at their election, is capable of enforcement in a court of equity, though they have not established their debts by judgments at law—though they have not resorted to or exhausted legal remedies. —*Holt v. Bancroft*, 30 Ala. 193; *Crawford v. Kirksey*, 50 Ala. 590.

It is not denied that, if the mortgage executed by Dees on the 18th February, 1880, had been a security for the payment of antecedent debts only, it would have been a general assignment, which under the statute enures to the benefit of all the creditors of the mortgagor equally. The proposition is, that as the time of payment of the debt due from Dees, the mortgagor, to Danner & Co., the mortgagees, was extended, and

[Danner & Co. v. Brewer & Co.]

Danner & Co. bound themselves to make, and did make future advances to Dees in consideration of the mortgage, and upon the faith of its security, the mortgage is not within the operation of the statute ; that it is only assignments of which pre-existing debts form the consideration and not assignments for which there is a new and present consideration, constituting the assignee a *bona fide* purchaser, protecting him against outstanding equities of which he had no notice, to which the statute refers. This proposition was suggested, but was not passed upon in *Holt v. Bancroft, supra*, the court saying : " Such a preference could not be maintained in favor of one not a purchaser for value; whether it could in favor of such a purchaser, is a question outside of this case, and we do not decide it." In the recent case of *Shirley v. Teal*, 67 Ala. 449, the question was directly presented, and directly decided. We said : " The purpose of the statute is to prohibit a debtor from exercising the right which he had at common law to prefer one creditor to another, where he seeks to do so by disposing of all of his property by mortgage or other like security. Its policy is similar in nature and design to that of all bankrupt laws, which is to secure a *pro rata* disposition of the assets of insolvent debtors equally among all their creditors. The fact that all of the grantor's property, or substantially all, is included in the conveyance, seems, in such cases, conclusive of the fact of his insolvency . . . The statute prohibits the giving by a debtor of a preference or priority of payment, by general assignment, to one or more creditors. It makes no distinction between the creditor of a day and one of an hour. The age of the debt is not material." When the statute is taken and read, as it must be, in connection with the law as it had existed, its purposes and objects seem plain. When the debtor is parting with substantially all of his property to secure the payment of debts, the statute intervenes. It does not strip the debtor of the power to assign or transfer his property in any appropriate form, for the payment or security of his debts. Of its own force, it does not annul any and all preferences or priorities of payment, he creates. Such preferences or priorities, at the election of existing creditors, he is deprived of the power of creating, if he is parting with all his property in any mode as a security for the payment of debts. The statute is directed against the power of the debtor—it is intended to deprive him of a recognized power at common law —the power of preferring his creditors by a general assignment. It would be of frequent and easy evasion if the preferences could be created for the payment of debts presently created, or for the security of antecedent debts into which a new consideration is introduced. This statute interdicts the creation of such preferences or priorities, and it is doubtless a part of its policy,

to interdict them in general assignments founded upon a new or contemporaneous consideration, most often given at the expense of creditors generally, by embarrassed debtors struggling to continue business, or to maintain credit. There is not in the words of the statute, nor in its purposes or objects, as we ascertain them by a comparison of the statute with the prevailing law, the mischief which it was intended to cure, any room for excepting from its operation general assignments made upon a new or present consideration.

The assignment enures, however, only to the benefit of creditors whose claims or demands are in existence when it is made. These only have then an equitable claim upon the property of the debtor, the statute is intended to preserve and enforce. Subsequent creditors are not within its scope or purview. Under the statute all existing creditors are let in as the beneficiaries of a general assignment. If the assignment were so written, if the creditors were specially named, the statute would not be offended and there would be no reason or equity in the claim of subsequent creditors to participate in its benefit. Such is the legal effect and operation of the assignment, though expressed to be for the security of a single creditor, and the rights of existing creditors who may intervene and claim its benefits can not be diminished by the claim of participation preferred by subsequent creditors.

The rights of creditors attaching at the time of the execution of the assignment, it follows they can not be divested or affected by any subsequent act of the assignee and the assignor, had and done without notice to them and without their assent. The law intervenes and declares the uses and trusts, and converts the assignee into a trustee for their execution. The assignment may be, and most often is, executed without the knowledge of the creditors generally—the creditors to whom the statute extends its benefits. Trusts are frequently created for the benefit of persons who have no knowledge of them, yet they have the unqualified right to affirm them, when informed of their creation.—*Cumberland v. Codrington*, 3 Johns. Ch. 229 ; *Shepherd v. McEvers*, 4 Johns. Ch. 136 ; *Brooks v. Marbury*, 11 Wheat. 78 ; 2 Story's Eq. § 1036 *a*. What would be the consequence, if the creditors generally, having notice of the assignment, did not in a reasonable time manifest an intention to claim its benefits, or if having notice of it, they suffered its trusts to be executed without objection, or without intervening to claim under it, is not a question we are now required to consider. By the terms of the mortgage, if there was default in the payment of the secured debts, the foreclosure was to be had by the execution of the power of sale. The sale was to be public, made after the giving of twenty days notice by adver-

tisement. Instead of a foreclosure, the mortgagees entered into a new contract with the mortgagor, by which they became the purchasers of the property, within a short time after default in the payment of the mortgage debt, and after the prescribed time of foreclosure by sale. As to the creditors entitled equally with the mortgagees to the security of the mortgage, this transaction is without effect. Their rights could not be impaired or destroyed by the acts of the mortgagor and mortgagees, of which they did not have notice, and to which they did not assent.

It is this last transaction which is claimed by the creditors whose debts were not in existence when the mortgage was executed, to have the effect of a general assignment. But it was a sale, absolute, unconditional, not having any of the incidents or qualities of an assignment, and is not within the influence of the statute.

The statute is in abrogation of the common law—is introductive of a new principle, giving to the assignments to which it refers an operation and construction different from that which the common law attached to them. The presumption is, the common law prevails in Mississippi, where a part of the lands embraced in the mortgage is situate. The law of Mississippi, not the law of Alabama, must determine the nature and extent of the estate and interest, legal or equitable, passing by the mortgage in and to the lands there situate.—Story, Con. Laws, § 445; *Nelson v. Goree*, 34 Ala. 565. The principle is quite universal, that real estate, as to its enjoyment and transmission, is governed by the law of the place where it is situated.

The bill by its averments does not show affirmatively, that the debts of any of the complainants, except Prudhomme and Wollner, Hirshberg & Co., were existing at the time the mortgage was executed. The averment is, that of the debt owing Haralson & Co., "a large portion of the debt existed prior to the 18th February, 1880," the day the mortgage was executed. The averment is too vague and uncertain. If it were confessed the court could not with safety decree, that as to any part these complainants were entitled to participate in the security of the mortgage.

The result is, the chancellor erred in not sustaining the demurrer, so far as it was directed to such parts of the bill as claimed relief in respect to the lands situate in Mississippi, and to the claim of relief by all the complainants, except Prudhomme and Wollner, Hirshberg & Co. In all other respects, the demurrer was properly overruled. The decree of the chancellor is consequently reversed, and the cause remaded for further proceedings in conformity to this opinion.