# Gay, Hardie & Co. v. Strickland.

*Bill in Equity to have Conveyance by Debtor declared a General Assignment and for the Appointment of a Receiver.*

1. *Effect of conveyance by debtor of all his property; rights of non-preferred creditors under the statute.*—Under the provisions of the statute (Code of 1886, § 1737), as amended by the act approved February 21, 1893 (Acts, 1892-93, p. 1046), a conveyance by a debtor of substantially all of his property in payment of a prior debt, by which preference is given to one or more of his creditors over his remaining creditors, is not annulled, nor is it regarded as fraudulent; but such conveyance creates a trust in favor of the non-preferred creditors of the grantor, which, at their election, inures to their benefit, and the vendee becomes a trustee, holding the property for the equal benefit of all the creditors; and this trust is cognizable only in a court of equity, which has exclusive jurisdiction for its enforcement.

2. *Same; equity jurisdiction; injunction of suits at law.*—Where a debtor has conveyed substantially all of his property in payment of a prior debt, thereby giving preference to the vendee over his other creditors, the fact that the property so conveyed has been levied upon by attachments issued out of a court of law against the vendee at the suit of some of the non-preferred creditors, does not prevent a court of equity from assuming jurisdiction on a bill filed by other non-preferred creditors for the appointment of a receiver and for the enforcement of the trust created in the vendee by the statute (Code of 1886, § 1737; Acts, 1892-93, p. 1046); and a court of equity may, in the same action, enjoin the attachment suits at law to await the result of the chancery suit.

[Gay, Hardie & Co. v. Strickland.]

Appeal from the Chancery Court of Dale.

Heard before the Hon. Jere N. Williams.

The amended bill in this cause was filed on October 15, 1894, by Gay, Hardie & Co. against Eliza A. Strickland and others. The bill averred that D. D. Strickland, being largely indebted to various parties, including the complainants, to each of whom it is averred he owed large amounts, named in the bill, did, on or about the 2d day of October, 1893, sell and transfer his entire stock of goods, wares, and merchandise, and other property therein mentioned to Eliza A. Strickland, his wife, for a consideration, expressed in the bill of sale, of three thousand dollars, cash; that this sale constitutes a sale of substantially all of the property owned by D. D. Strickland at the time of the sale; that D. D. Strickland was insolvent; that Mack, Stadler & Co., Steiner & Lobman, and Spraggins, Buck & Co., had, each, since the date of said sale of said goods by D. D. Strickland to his wife, Eliza A. Strickland, sued out an attachment in the circuit court of Dale county, and had the attachments levied upon said goods in the possession of Eliza A. Strickland, for an alleged indebtedness of D. D. Strickland to said firms of $600, $200, $53.50, respectively. It is further averred in the bill that the value of the property so sold amounted to considerably more than the sum total of the attachment debts; that all this property was attached by the sheriff, and afterwards delivered to Eliza A. Strickland, upon execution by her of claim bonds; that the attaching creditors and the sureties on said claim bonds, together with D. D. Strickland, are all made parties respondent to the bill; that the consideration for the sale of the goods by D. D. Strickland to his wife, was not a cash consideration as recited in the bill of sale, but was an old debt that D. D. Strickland owed his wife; and that in the answer filed by Eliza A. Strickland to the original bill in this cause, which was a sworn answer, she sets up that the consideration for the sale was a past due debt owing to her by her husband. The bill is open for any and all of the creditors of D. D. Strickland to join as complainants in the suit.

The prayer of the bill was that the attachment suits be enjoined, that Mrs. Eliza A. Strickland and the sureties on her claim bonds be made to account for the value

of the goods which had been disposed of since their delivery to Eliza Strickland; that a receiver be appointed to take charge of the goods still in possession of Mrs. Strickland, to sell the same, and account to this court for the proceeds; and that on the final hearing of this cause, the proceeds of the sale of these goods sold by Strickland to his wife be divided, according to law, among the several complainants to the bill, and the other creditors of the said D. D. Strickland, who should prove their claims. The bill was verified by affidavit.

On October 19th, 1894, the chancellor made an order granting the injunction as prayed in the bill. The injunction bonds were given, and the writs issued, restraining the attaching creditors from further prosecuting the attachment suits. On October 20, 1894, the chancellor rendered an order appointing a receiver, as prayed in the bill. On July 28th, 1895, a demurrer was interposed to the amended bill, the grounds of which were as follows: 1st. The bill is wanting in equity, in that it shows on its face that the goods, wares, and merchandise therein set forth, as having been sold by D. D. Strickland, are or were attached and taken into the custody of a court of law, before said bill was filed, and complainants fail to assert any superior lien to that of the attachment creditors. 2d. "That said bill is without equity in this, that it shows that said property had been seized by the sheriff, under attachments issued from a court of law, prior to the filing of said bill, and that said property was replevied by a claimant of said property, who had given a claim bond, and obtained possession thereof, and that said property is now in the custody of the law, and complainants have failed to assert any superior lien on said property, and that any interference with the same by a court of chancery would be prejudicial to the rights of the claimant and her sureties and to the prior acquired jurisdiction of the law court over said matter."

A motion to dismiss the bill for the want of equity was filed at same time the demurrer was filed. There are four grounds for the motion, as follows: 1st. "Because a court of law has already assumed jurisdiction of the property involved in this controversy, and of the parties to this bill." 2d. "Because the complainants in said bill did not set up a claim with a lien superior to

[Gay, Hardie & Co. v. Strickland.]

that of Eliza A. Strickland." 3d. "Because the complainants did not show in their bill that they have any lien upon the property involved in this controversy." 4th. "Because the complainants in said bill seek to invoke the aid of a court of chancery to enable them to wrest from a court of law the attachments upon the property in controversy, when said goods were in the custody of the law, and without asserting any prior lien on said property."

The cause being submitted, on the amended bill and the demurrer thereto and the motion to dismiss for the want of equity, the chancellor rendered a decree, sustaining the demurrer and dismissing the bill for the want of equity. Complainants appeal from this decree of the chancellor, and assign the rendition thereof as error.

BORDERS & CARMICHAEL, for appellant.—The bill was amended to comply with the opinion of this court, and, as amended, it contained equity, and the demurrer should have been overruled.—Acts of 1892-93, p. 1046 ; *Strickland v. Gay, Hardie & Co.*, 104 Ala. 375.

BLACKMAN & BAILY, *contra.* — Property which has been seized · by attachment issuing out of the circuit court, and delivered to a claimant on the execution of a statutory bond, is in the custody of the law, and can not, except in assertion of a paramount lien, be transferred by a court of equity to a receiver, at the instance of another creditor of the attachment defendant. Property in possession of defendant, Eliza A. Strickland, who claims as a *bona fide* purchaser having been attached by process issuing out of the circuit court, and redelivered to such defendant and sureties under a claim bond, was in the custody of the law, and it would be error to take it away from such custody, and place it in the hands of a receiver. It would be alike prejudicial to the rights of the claimant and her sureties, and to the prior acquired jurisdiction of the law court over the *res*, which is the subject of contention.—*Rives v. Wilborne*, 6 Ala. 45 ; *Langdon v. Brumby*, 7 Ala. 53 ; *Kemp v. Porter*, 7 Ala. 138 ; *Read v. Sprague*, 34 Ala. 101 ; *Williams v. Dismukes*, 106 Ala. 402.

[Gay, Hardie & Co. v. Strickland.]

BRICKELL, C. J.—The case was before the court at a former term.—*Strickland v. Gay*, 104 Ala. 375. Since, the bill has been amended, curing the insufficiencies then pointed out, and by the addition of allegations of facts which impart to it equity, according to the opinion then rendered.

The statute, (Code of 1886, § 1737), as amended by the act approved February 21, 1893, reads: "Every general assignment, or a conveyance by a debtor of substantially all of his property in payment of a prior debt, by which a preference or priority of payment is given to one or more creditors, over the remaining creditors of the grantor, shall be and inure to the benefit of all the creditors of the grantor equally, but this section shall not apply to or embrace mortgages given to secure a debt contracted contemporaneously with the execution of the mortgage, and for the security of which the mortgage was given."—Pamph. Acts, 1892-93, p. 1046. The original of the statute is found in the Code of 1852, (§ 1556), which read: "Every general assignment, made by a debtor, by which a preference, or priority of payment is given to one or more creditors, over the remaining creditors of the grantor, shall be, and inure, to the benefit of all the creditors equally;" and in this form, without any change or varying of its words, was carried into the Revised Code of 1867, (R. C., § 1867), and into the Code of 1876, § 2126. This court having decided in *Shirley v. Teal*, 67 Ala. 449, and in *Danner v. Brewer*, 69 Ala. 191, that mortgages to secure the payment of debts contemporaneously contracted, were within the influence of the statute, by an act approved February 23, 1883, (Pamph. Acts, 1882-83, p. 189), the statute was amended, excepting such mortgages from its operation; and as amended, the statute was carried into the Code of 1886.—Code of 1886, § 1737.

An absolute sale, unconditional, free from all reservation, in payment or satisfaction of antecedent debts, it was uniformly decided was not within the operation of the statute.—3 Brick. Dig. 50, § 29; *Ellison v. Moses*, 95 Ala. 221. In *Danner v. Brewer*, 69 Ala. 200, it is said: "Though sales are often denominated assignments, yet between them and the transactions to which the statute refers there is a broad and manifest distinction. By a sale the vendor strips himself irrevocably and absolutely

of all right, title and interest, present or future, in the subject-matter of the sale. There is no right of redemption remaining in him—no trust resulting to him in any event. An assignment, whatever may be its form, has these incidents and qualities. It is subject to the uses and trusts declared in it, and which must be distinctly declared, or it will be void as to creditors. The satisfaction or extinguishment of these uses and trusts results in a divestiture of the title the assignment creates ; or results in a trust of the residue of the property or its proceeds, unappropriated after the satisfaction of the uses and trusts. The sale operates an immediate satisfaction of the debts taken in payment—the assignment does not of itself pay or satisfy debts ; it simply provides for, or secures payment." The purpose and policy of the statute in its origin was, to withdraw from the debtor, making a transfer of substantially all of his property as a security for the payment of debts the power he had at common law to discriminate or create preferences among and between his creditors. Such transfers are but seldom, if ever made, except in the presence of actual or apprehended insolvency ; and in such an event, the law favors equality among creditors. Experience demonstrated that absolute sales in payment of debts were often resorted to, in evasion of the policy and purposes of the statute ; and generally, in favor of *confidential creditors*, as they were termed ; creditors who had furnished the failing debtor with means of obtaining credit to which he was not entitled, involving in loss the unsuspecting and fair dealing creditor.

The purpose of the amendment of the statute, is to draw, all such sales, all conveyances of substantially all of the property of a debtor, in payment of a pre-existing or prior debt, within its operation. Placing such sales or conveyances upon the same footing with instruments of assignment, or of other form of security for the payment of debts ; engrafting upon each the same trusts— trusts for the equal benefit of all creditors. The sale or conveyance is not annulled ; nor is it regarded as fraudulet. It is preserved, as the assignment or other form of security for the payment of debts is preserved. At the election of other creditors, it inures to their benefit— the vendee becomes a trustee, holds the title passing by the sale or conveyance, but holds it for the equal benefit

of all creditors, as if such had been the expressed pur-
poses and objects of the sale or conveyance.  The same
construction of the statute in reference to these sales or
conveyances, must be adopted, which prevailed in refer-
ence to assignments, of other instruments of security for
the payment of debts.  The statute was amended, draw-
ing the sale or conveyance within its operation, with the
knowledge of the lawmaker of the prevailing construc-
tion, and the presumption must be, with the intention
to adopt that construction.  As to assignments, or other
forms of security having the qualities of an assignment,
they were read and construed, as if the priorities or pref-
erences they created were blotted out, as if the statute
were incorporated, and instead of the priorities or prefer-
ences, a security for the benefit of all creditors equally,
was expressed.—*Price v. Mazange*, 31 Ala. 701; *Rapier v.
Gulf City Paper Co.*, 64 Ala. 330; *Danner v. Brewer*, 69
Ala. 200, *supra*.  The rights of creditors attached at the
time of the execution of the assignment, and were inca-
pable of diminution or destruction by any subsequent
act of the assignor or assigneee, had and done without
notice to them, and without their assent.  It is a trust,
a trust pure and simple, the statute creates, cognizable
only in courts of equity; and hence, creditors not hav-
ing exhausted remedies at law, may resort to equity for
its enforcement.  The trust is in the nature of a lien, the
enforcement of which is deemed to lie within the pecu-
liar province of a court of equity.—*Holt v. Bancroft*, 30
Ala. 193; *Danner v. Brewer, supra*.  At law, there is and
can be no remedy for its enforcement; there the assign-
ment, or sale, must stand or fall as it may be written or
made.  The parties, assignor and assignee, or vendor
and vendee, are bound by it, according to the terms of
their agreement, and as between them, the statute does
not intervene.  The trusts it creates are extended only
to creditors, and creditors who are not parties to the as-
signment, or sale, and who were not intended to be ben-
efitted by the one or the other.—*Sampson v. Jackson*, 103
Ala. 550.  The case of *Bray v. Ely*, 105 Ala. 553, to
which we are referred, has no bearing upon any question
now presented.  It was a trial of the right of property
at law, in which the sale was assailed as fraudulent in
fact; and in which the equities or rights of creditors at
large were not involved; and in which, of course, there

was not, and could not have been a consideration of the statute which causes the sale to inure to the benefit of all creditors.

In the former opinion in this case (*Strickland v. Gay*, 104 Ala. 378), it was said: "If the bill shall be so amended as to allege that the conveyance to Mrs. Strickland was in payment of prior indebtedness owing by her husband to her, and the averment that there was other property belonging to the grantor, D. D. Strickland, shall be stricken out, the bill will contain equity, and upon the bill as amended being verified, the appointment of a receiver will be proper, unless a countervailing showing against it is made by the respondents. In order to take the property levied on under attachments from the custody of the sheriff, if a receiver shall be hereafter appointed, there should be a prayer in the bill for injunction of the further prosecution of the attachment suits by the plaintiffs therein, and such prosecution actually enjoined by the order of the chancellor, and the giving by complainants of the proper bond." The bill having been amended in conformity to the opinion, it was doubtless in obedience to it, that the chancellor awarded a temporary injunction, and appointed a receiver to take possession of the goods. It is difficult to understand upon what theory or principle, subsequently, a motion to dismiss the bill for want of equity, and demurrers addressed to its equity, were sustained. The equity of the bill as amended had been adjudged by this court; the adjudication that the grant of an injunction and the appointment of a receiver would be proper, necessarily involved a determination that the bill contained equity, for an injunction or the appointment of a receiver can be obtained only on bills disclosing cases of equitable cognizance.

The argument of counsel in support of the decree is that as the goods in controversy had been levied on by attachments issuing out of a court of law, and the purchaser had given bonds for a trial of the right of property, the goods were in the custody of the court of law, and a court of equity may not disturb that custody; may not draw them, and the parties asserting claim to them, within its jurisdiction. We have decisions maintaining the doctrine, that when legal process, an attachment or execution, is levied on personal property claimed by a

person not a party to the process, who gives bond and takes the necessary steps for a trial of the right of property under the statute, the property is in the custody of the court from which the process issues, and is not open to the levy of other legal process, not having a prior or paramount lien.—*Rives v. Wilborne*, 6 Ala. 45 ; *Langdon v. Brumby*, 7 Ala. 53 ; *Kemp v. Porter*, Ib. 138 ; *Dollins v. Lindsey*, 89 Ala. 217 ; *Williams v. Dismukes*, 106 Ala. 402. There is a broad, marked distinction and difference between those cases and the case under consideration, rendering wholly inapplicable the doctrine they assert. They involved only legal rights, while the rights of the complainants are strictly equitable, and cognizable only in a court of equity, as we have already said. The principle underlying those cases, so far as it has relation to the jurisdiction of a court of equity, is the well defined principle, that when the primary right or interest is legal, and courts of law and of equity have concurrent jurisdiction, the court which first takes jurisdiction of a particular controversy, *ordinarily*, acquires exclusive jurisdiction, with which no other court of mere concurrent jurisdiction will interfere.—1 Pomeroy Eq., § 179. This principle is, however, subordinate to that which may be termed a well defined exception. If there are equities involved, of which a court of law can not take cognizance, and of which cognizance must be taken, if complete justice is done between the parties, a court of equity will intervene, though the jurisdiction of the court of law has attached and is in exercise—*Ware v. Russell*, 70 Ala. 174 ; 1 Story Eq., §§ 26-30.

The principle now more immediately involved is, that the complainants are seeking to enforce trusts, purely and strictly of equitable cognizance ; of which courts of law can not take notice or cognizance, and can not draw before them all parties who have rights or interests involved ; and in all such cases the jurisdiction of a court of equity is exclusive—.1 Pomeroy Eq., § 137 ; 1 Story Eq., §§ 26-30. The attaching creditors may be enjoined from prosecuting at law the attachment suits and the trials of the right of property. The injunction operates only on the creditors and the claimant of the property ; it does not act upon the court of law itself ; nor is it an exercise of supervising power over the court, or of its proceedings. As there are trusts to be enforced,

[Johnson v. Rogers.]

of which the court of equity has exclusive jurisdiction, and the more perfect means of doing complete justice, it draws before it, all parties having rights or interests to be affected by its decree ; and enjoins such of these parties as may be pursuing legal remedies from pursuing them further, without interfering with the jurisdiction of the court at law.—2 Story Eq., § 1574.

As amended the bill is properly constituted as to parties. The attaching creditors, the claimant in the trials of the right of property, and the sureties on the claim bonds, are parties defendant. Having before it all necessary parties, the court will adjust its orders and decrees so as to meet all their real and substantial rights. Without pursuing further the discussion of the case, it is only necessary to say, the decree of the chancellor must be reversed, a decree entered overruling the motion to dismiss for want of equity and the demurrers, and the cause remanded.

Reversed, rendered and remanded.