# Anniston Carriage Works et al. v. Ward et al.

*Bill in Equity to have a Mortgage declared a General Assignment.*

1. *Mortgage to secure pre-existing debt a general assignment.*—Where an insolvent debtor mortgages all of his property to secure a pre-existing debt, and this mortgage is satisfied prior to its maturity by the sale of part of the goods and the procurement of money by the mortgagor from another person by a second mortgage conveying the same property, the first mortgage is declared to be a general assignment for the benefit of the debtor's creditors, (Code, § 1737), and the

money received by the first mortgagee, in satisfaction of his mortgage, is a trust fund in his hands, subject to the claims of the mortgagee's creditors.

2. *Bill to have mortgage declared a general assignment; second mortgagee not a necessary party.*—Where a bill is filed to have a mortgage executed by an insolvent debtor to secure a pre-existing debt declared a general assignment, the second mortgagee, from whom the debtor obtained money to satisfy the mortgage executed to the first mortgagee, is not a necessary party.

APPEAL from the City Court of Anniston.

Tried before the Hon. B. F. CASSADY.

R. D. Ward & Co., and other creditors of the Anniston Carriage Works, on the 28th day of January, 1892, filed their bill in the city court of Anniston, seeking to have a mortgage executed by the Anniston Carriage Works to the Anniston Loan & Trust Co. declared a general assignment, for the benefit of all creditors of said Anniston Carriage Works. It is alleged that on the 2d day of November, 1891, the Anniston Carriage Works executed a mortgage conveying to the Anniston Loan & Trust Co. substantially all of its property, to secure a pre-existing debt. The mortgage was due sixty days after date, and matured on the 1st day of January, 1892. The prayer of the bill is that the mortgage be declared a general assignment for the benefit of all the creditors, and that the Anniston Loan & Trust Co. be held to account to the creditors for the value of the stock of buggies, carriages and merchandise, alleged to be of the value of eleven thousand dollars, for the benefit of the general creditors.

The respondents, the Anniston Carriage Works and the Anniston Loan & Trust Co., answered the bill, and alleged that the Anniston Carriage Works was indebted to the Anniston Loan & Trust Co. in the sum of about five thousand dollars, for advances made by said Anniston Loan & Trust Co., which was doing a banking business, in paying drafts drawn by said Anniston Carriage Works, and overdrafts made by the latter, the aggregate of which amounted to over five thousand dollars, and for which it negotiated a loan with said bank, due sixty days after date, and executed a mortgage to secure the same upon its stock of buggies, carriages and other merchandise, consisting substantially of all its property. Prior to the maturity of this debt, and on the 3d day of

December, 1891, the Anniston Carriage Works paid the debt in full, and the mortgage was satisfied, and the Anniston Loan & Trust Company, which had temporarily assumed possession of the mortgaged property, restored the same to the mortgagor, and the mortgage was cancelled and satisfied. Afterwards, and before the filing of the bill in this cause, the Anniston Carriage Works executed a new mortgage upon the same property to one William Noble to secure a loan which it obtained from said William Noble, contemporaneously with the making of said mortgage, and subsequently made a bill of sale to William Noble in extinguishment of this mortgage. Both respondents pleaded that William Noble is a proper and necessary party respondent to the bill; and the Anniston Carriage Works filed a separate plea setting up the invalidity of the mortgage, because it had not been authorized by a stockholder's meeting, nor had thirty days notice of any meeting for that purpose been given to the stockholders, or any of them. Each of the respondents filed demurrers for the non-joinder of other creditors of the Anniston Carriage Works as co-complainants.

On the final submission of the cause, the court below overruled the demurrer and plea, and rendered a decree granting the relief prayed for by complainants. Respondents appeal, and assign this decree as error.

KNOX, BOWIE & PELHAM and J. J. WILLETT, for appellants.—When the indebtedness of the Anniston Carriage Works to the Anniston Loan & Trust Company was paid, the claim on the Loan & Trust Company was extinguished; and by accepting its payment the latter company violated no obligation which it owed to other creditors of the Anniston Carriage Works, nor did it incur any liability to them. It could not refuse to accept payment of the mortgage indebtedness. It held only a conditional conveyance of the property, by the very terms of which it was stipulated that the mortgage should be void if paid at maturity. It would be contrary to all rules of equity to hold the bank liable as a trustee *in invitum* for doing what the mortgage contract bound it to do and what the Carriage Works could compel it to do.—*Benedict, Hall & Co. v. Renfro Bros.*, 75 Ala. 121; *Murray v. McNeely*, 86 Ala. 234; 5 So. Rep. 565; *Rankin v. Vandiver*, 78 Ala. 562; *Stephens v. Regenstein*, 89 Ala. 561; 8

So. Rep. 68; *Harmon v. McRae*, 91 Ala. 401, 8 So.
Rep. 548. The case of *Danner & Co. v. Brewer & Co.*, 69
Ala. 191, does not apply. In that case the mortgagee
afterwards received a deed to the property and appro-
priated it to his own use. Even a trustee *in invitum* is
only liable for the amount actually received.—*Hill v.
Jones*, 65 Ala. 214. The bill in this case should have
been dismissed for want of necessary parties.—3 Brick.
Dig. 33¹; *Merritt v. Phenix*, 48 Ala. 87; *Prout v. Hoge*, 57
Ala. 28; *Thornton v. Neal*, 49 Ala. 590; 3 Brick. Dig.,
373, §§ 97, 98.

CASSADY, BLACKWELL & KEITH, *contra*, cited *Danner v.
Brewer*, 69 Ala 191; *Andrews v. Hobson*, 23 Ala 219; *Ross
v Barclay*, 55 Amer. Dec. 616, and authorities there cited;
*Shepherd v. McEvers*, 8 Amer. Dec. 561.

COLEMAN, J.—On or about the 2d day of November,
1891, the Anniston Carriage Works, a body corporate,
being then indebted to complainants, the appellees, and
other creditors, to secure a past indebtedness due and
owing to the Anniston Loan & Trust Co., also a body
corporate, executed to it a mortgage upon substantially
all its property and effects. Complainants, creditors of
the Anniston Carriage Works, filed the present bill,
seeking to have the mortgage conveyance to the Loan &
Trust Co. declared a general assignment for the benefit
of all its creditors. The mortgage to the Anniston Loan
& Trust Co. was executed in the name of "Anniston
Carriage Works, by Randolph St. John, Secretary and
Treasurer." The evidence is sufficiently satisfactory
that this mortgage was executed by authority granted by
the board of directors. It was certainly subsequently
recognized and ratified as binding. The main defense
relied upon is, that the mortgage debt was satisfied and
the mortgage cancelled on or about the 1st of December,
1891, long before the filing of the present creditors' bill.
The facts upon which this defense is based, briefly stated,
are as follows: The mortgage to the Anniston Loan &
Trust Co. was executed on the 2d of November, 1891, to
secure a debt of $5,000, and it became due on the 2d day
of January, 1892. The Loan & Trust Co. took imme-
diate possession of the property. On the 1st of Decem-
ber, prior to the maturity of the mortgage, the Anniston

43

Carriage Works borrowed from William Noble four thousand dollars, and to secure the payment of this indebtedness the Anniston Carriage Works executed another mortgage to William Noble on the identical property, which had been mortgaged to the Loan & Trust Co., except such portion as had been previously sold. The check of William Noble for four thousand dollars, together with the check of the carriage company for one thousand dollars, was applied to the Loan & Trust Co. in payment and satisfaction of the debt due it from the carriage company, and the mortgage of the carriage company to secure this debt was cancelled.

Section 1737 of the Code reads as follows: "Every general assignment made by a debtor, by which a preference or priority of payment is given to one or more creditors, over the remaining creditors of the grantor, shall be and enure to the benefit of all the creditors of the grantor equally; but this section shall not apply to or embrace mortgages given to secure a debt contracted contemporaneously with the execution of the mortgage, and for the security of which the mortgage was given." It is averred in the bill, and the proof shows, that the debt due the Loan & Trust Co., to secure which the mortgage to that company was executed, was not contracted contemporaneously, but was a past due debt. The proof also shows that the mortgage embraced substantially all the grantor's property, and that the grantor, the carriage company, at the time was insolvent. It is clear that this mortgage was a general assignment within the meaning of the statute, and if complainants had filed their bill before the execution of the mortgage to William Noble, and before the attempted cancellation of the mortgage to the Loan & Trust Co., asking for its foreclosure for the benefit of creditors, we would be compelled to declare that the conveyance created a general assignment, and that it could be enforced for the benefit of the non-preferred creditors. These complainants and other creditors not named in the mortgage had the same rights and were entitled to the same privileges in the conveyed property, by virtue of the statute, as if they had been named and specifically provided for along with the Anniston Loan & Trust Co., so far as the Anniston Loan & Trust Co. is concerned. Possibly the effect upon third parties, not charged with notice, would be differ-

ent. Neither would this result be altered, if, under the power contained in the mortgage, the Anniston Loan & Trust Co. had foreclosed the mortgage and applied the proceeds to the payment of the debt secured by the mortgage. A court of equity, at the instance of non-preferred creditors, would decree the conveyance a general assignment, and the mortgagee an assignee or trustee of the proceeds of the mortgage property for their benefit.— *Danner & Co. v. Brewer*, 69 Ala. 191; *Holt v. Bancroft*, 30 Ala. 193.

Can it make any difference in principle because the grantor, by a second mortgage on the same property, borrows money from a third person and pays it over to the preferred creditor in satisfaction of a conveyance, which the law declares "shall enure to the benefit of all the creditors of the grantor equally?" The transaction shows that it was the understanding of all the parties that the money loaned by William Noble was to be paid over to the Anniston Loan & Trust Co., and that company was to cancel its mortgage, so that the carriage company could, by a second mortgage, secure William Noble in the loan of four thousand dollars. Suppose in the first instance, William Noble had purchased the entire property for a cash consideration of four thousand dollars, which is proven to have been worth then full five thousand dollars, it could not be said he had paid a fair equivalent for the property. It is apparent that when the property was mortgaged to the Loan & Trust Co. it was worth five thousand dollars, the full equivalent of the debt secured by the conveyance. In the meantime, before the execution of the mortgage to William Noble, one thousand dollars of this property had been disposed of. It was in the possession of the Loan & Trust Co. It could not have been disposed of without its consent. We infer the check of the carriage company for one thousand dollars covered the value of the property which had been thus disposed of before the execution of the mortgage to William Noble. Thus, under and by virtue of the mortgage, which we declare to have created a general assignment for the benefit of all the creditors, the Loan & Trust Co. has realized the entire proceeds of the property conveyed. Equity looks at the substance and effect of a transaction. It will not permit the rights of creditors, secured to them by the law,

to be circumvented or overreached. We hold that the bill is properly filed against the Anniston Loan & Trust Co., and that the proof sustains the averment that the mortgage was a general assignment, enuring to the benefit of all the creditors. William Noble has no interest in what disposition is made of the money paid by him for the property. The mortgage to him was to secure a debt contracted contemporaneously with the execution of the mortgage, and it may be was not within the influence of section 1737 of the Code; but this section can not alter the effect of the mortgage to the Loan & Trust Co. It was this latter mortgage that enabled the Loan & Trust Co. to monopolize the entire assets of the carriage company. The money stands in lieu of the property, and is equally subject to the claim of other creditors. It is the proceeds of the property in the hands of the Anniston Loan & Trust Co., which is sought to be reached and subjected by the bill.

Notice should be given to all the creditors who are entitled to share in the proceeds to come in and prove their claims. This we understand to be the effect of the decree of the city court, and in so holding there was no error.

Affirmed.