# Anniston Loan & Trust Co. v. Ward & Co. *et al.*

*Bill in Equity to declare Mortgage a General Assignment.*

1. *General assignment; solicitor's fees.*—If the grantee of an instrument operating as a general assignment, having knowledge or information of the claim of unsecured creditors, repudiates the trust compelling the beneficiaries to sue for its enforcement, he becomes a delinquent trustee. As between trustee and *cestui que trust*, the trustee must bear the costs of litigation his delinquency necessitates, and when himself one of the beneficiaries, cannot complain that solicitor's fees were deducted from the aggregate fund covered by the conveyance.

2. *Register's report; objections.*—Where there is evidence before the register, his findings will not be disturbed on appeal unless the court is prepared to say that they are palpably wrong.

APPEAL from Anniston City Court.

Heard before Hon. JAS. W. LAPSLEY.

[Anniston Loan & Trust Co. v. Ward & Co. *et al.*]

The facts are stated in the opinion.

Knox, Bowie & Pelham, for appellants, cited *Lippincott v. Shaw Carriage Co.*, 34 Fed. Rep. 570; *Dunpley v. Kleinsmith*, 11 Wall. 610; *Stout v. Stout*, 77 Ind. 537.

Cassady, Blackwell & Keith, *contra*, cited *Morton v. N. O. & S. R. R.*, 79 Ala. 590; *Trustees v. Greenough*, 105 U. S. 527; *R. R. & B. Co. v. Pettus*, 103 U. S. 116.

BRICKELL, C. J.—The suit originally was a bill filed by Ward & Co. and others, general creditors of the Anniston Carriage Works, on behalf of themselves and all other creditors of the Carriage Works, seeking to have a mortgage executed to the Anniston Loan & Trust Co. for its exclusive security, declared a general assignment enuring under the statute, (Code, § 1737), to the equal benefit of all creditors. A decree was rendered declaring the mortgage a general assignment, and requiring the Loan & Trust Company to account for the moneys it had received from a sale of the property, which, on appeal to this court was affirmed.—*Anniston Carriage Works v. Ward*, 101 Ala. 670. After the affirmance of the decree, the Loan & Trust Company propounded and proved its debt or demand, and was allowed to share with the other creditors in the distribution of the fund brought under the control of the court for administration, but insisted that its share of the fund was not to be diminished by an allowance of compensation to the solicitors of the original complainants. The insistence was overruled, the compensation of the solicitors was charged on the aggregate fund brought before the court, and the single question now presented is, whether the compensation should have been charged on the aggregate fund, or only on so much thereof as remained after deducting the ratable proportion of the Loan & Trust Company.

A general assignment as known to the common law, is defined by Burrill, as an assignment "by which all, or substantially all of the debtor's property is appropriated for the benefit either of one or more preferred creditors, or of the creditors at large, made by a debtor in declining or insolvent circumstances."—Burrill on Assignments, § 13; Such assignments were recognized in this State,

prior to the present statute, as in all things valid and operative according to their terms, if made in good faith, and without the reservation of a benefit to the debtor, the property was devoted to the payment of the prescribed debts.—1 Brick. Dig. 128, § 75. The statute has uniformly been construed as operating upon all instruments of transfer and conveyance, without regard to their form, whether they are technically and in terms an assignment, or a mortgage, or a deed of trust, if the intention is manifested that they shall operate as security for the payment of debts.—*Holt v. Bancroft*, 30 Ala. 193; *Price v. Mazange*, 31 Ala. 701; *Warren v. Lee*, 32 Ala. 440; 3 Brick. Dig. 49, §§ 16-19. The statute does not avoid the instrument—it is not pronounced fraudulent as to the creditors discriminated against, or not preferred—the preferences or priorities are blotted out, are annulled, and the instrument is read, and effect given to it, as if the statute were incorporated into it—as if instead of the preference or priority, a security for the benefit of all creditors equally was expressed.—1 Brick. Dig. 130, § 97; 3 Brick. Dig. 49, § 16. Unsecured creditors not intervening, as between the parties, the instrument will have effect according to its terms.—*Rapier v. Gulf City Paper Co.*, 64 Ala. 330; *In re Tallassee Mfg. Co.*, *Ib.* 567. When unsecured creditors intervene; when they claim the benefit of the trust the statute creates, the assignee or grantee of the instrument becomes a trustee for all creditors, as he would have been if the instrument had in terms expressed and declared the trust the statute creates.—*Holt v. Bancroft*, 30 Ala. 193; *Danner v. Brewer*, 69 Ala. 191. If the assignee or grantee of the instrument, having knowledge or information of the claim and equity of unsecured creditors, repudiates the trust, compelling the beneficiaries to sue for its enforcement, he becomes a delinquent trustee. As between trustee and *cestui que trust*, the rule is very general, that the trustee must bear the costs of litigation his delinquency necessitates.—2 Perry on Trusts, § 900 *et seq.*

In *Grimball v. Cruse*, 70 Ala. 544, it was said : "There are cases, such as creditors' bills, bills to declare property subject to the payment of debts, and bills of kindred character, where the result of the litigation and judgment is to bring to light, and place within the control of the court, a fund which, without such legal proceedings,

would be beyond the reach of creditors ; cases in which outside creditors, if they wish to share in the fund, must come in, and avail themselves of the decree of condemnation, and, necessarily, of the professional labor and research which have discovered the fund, and made it available. In such cases, all who come in, and share the benefits of such recovery, must take them *cum onere.* They must contribute to the expense, as a condition upon which they can claim to share in the benefits.'' The general principle cannot be doubted that a trust fund must bear the expenses of its administration, and all who claim benefits from it, must contribute proportionately to the expenses. This is but a just application of the maxim, that equality is equity. The litigation by which the fund was brought into court for administration, was necessitated by the delinquency of the appellant, and it is not reasonable or equitable, that the creditors who were compelled into it should bear its burdens exclusively, while the appellant shares in its benefits. If the appellant had not intervened, and intervened in the only capacity in which there could be intervention, that of an unpreferred creditor, a creditor claiming the equality and the trust the statute creates, there could not have been participation in the fund the court was administering. The intervention placed the appellant on terms of equality with the other creditors—equality of burden as well as of benefit.—*Trustee v. Greenough*, 105 U. S. 527 ; *Central Railroad v. Pettus*, 113 U. S. 116.

As to the objections taken to the admission of evidence before the register on the reference to ascertain a suitable allowance to the counsel, as we do not deem it necessary to consider them. There was other evidence, and unless we were prepared to say the conclusions of the register are palpably wrong, they cannot be disturbed.—*Kinsey v. Kinsey*, 37 Ala. 393 ; *Mahone v. Williams*, 39 Ala. 202.

The decree of the city court must be affirmed.