# Dadeville Oil Mill *v.* Hicks, *et al.*

*Bill to Declare Mortgage General Assignment.*

(Decided December 18, 1913.   63 South. 970.)

*Assignments; Benefit of Creditors; Constructive; Separate Instruments of Preference.*—Within the provisions of section 4295, Code 1907, three mortgages executed at intervals of over a year, cannot be construed as one so as to have the effect of a general assignment unless it is shown that they were all in contemplation when the first was executed.

APPEAL from Tallapoosa Chancery Court.

Heard before Hon. W. W. WHITESIDE.

Bill by the Dadeville Oil Mill against W. W. Hicks and others, to have certain mortgages declared a general assignment, and enforce the assignment as to the creditors. From a decree dismissing the bill for failure of proof complainants appeal. Affirmed.

BRIDGES & OLIVER, for appellant. A mortgage executed by a debtor conveying substantially all of his prop-

erty as security for a pre-existing debt which is extended contemporaneously with the execution of the mortgage, and also for advances which the mortgagee stipulates in the mortgage to make to the mortgagor, and which are afterwards made in pursuance of such stipulation, is a general assignment under the statute, and the security thereby created inures to the benefit of all of the then existing creditors of the mortgagor, (except as to the advances actually made under the stipulations and agreement at the time of the execution of the mortgage).—*Collier v. Jones,* 85 Ala. 91; *Anniston Loan & Trust Co. v. Ward,* 108 Ala. 87; Code, § 4295; *Elliott, et al, v. Kyle,* 58 South. 309; *Anniston Carriage Works v. Ward, et al.,* 101 Ala. 670; *Hicks v. Dadeville Oil Mill,* 58 South. 57; *Green & Gay v. Wright, Williams & Whatley,* 160 Ala. 476. If the intention be to give the mortgagee a preference over the other creditors, by securing the payment of a past existing debt, the transaction is within the inhibition. Equity looks at the substance and effect of the transaction and will not permit the rights of creditors secured to them by law to be circumvented or overreached.— *Anniston Carriage Works v. Ward, et al.,* 101 Ala. 670; *Elliott, et al. v. Kyle,* 58 South. 309; *Baxley, et al. v. Simmons, Durham & Co.,* 132 Ala. 117; 27 Cyc. 1413.

JAMES W. STROTHER, for appellee. The court properly dismissed the bill because the proof failed to show that all the mortgages were in contemplation when the first one was executed, and the statute does not make a partial assignment to one creditor inure to the benefit of all the creditors.—*Inman v. Sloss,* 122 Ala. 461; *Anniston Co. v. Ward,* 108 Ala. 85; sec. 4295, Code 1907; *Rochester v. Armour,* 92 Ala. 435.

MAYFIELD, J.—Appellant filed its bill to have certain mortgages, executed by F. P. Wallace and wife to W. W. Hicks, doing business under the firm name of W. W. Hicks & Co., declared a general assignment; and to enforce the assignment so declared among the creditors of said mortgagors, one or chief of whom was complainant. The suit was submitted for final decree on pleading and proof. The chancellor denied all relief and dismissed the bill upon the ground that the complainant failed in its proof to show that the several mortgages were in effect, or could, by a court of equity, be declared to be a general assignment.

The contention of the appellant was that the several mortgages—one made in 1908, and the last in 1911— should be considered together and as constituting one transaction, and that, being so considered, they constituted a general assignment, and the court should so decree. On this phase of the case the chancellor thus decreed: "The material allegations of the bill are not proven. The mortgage made by Ada E. and F. P. Wallace to respondent W. W. Hicks on 29th February, 1908, cannot be declared any part of a general assignment at the suit of complainant, because complainant's debts against said mortgagors did not exist at the time of the execution of said mortgage. And the mortgage made by said parties to the bank cannot be declared a general assignment because it does not appear to include all, or substantially all, of the property of said mortgagors subject to execution. And the mortgage executed by said parties to respondent W. W. Hicks, on 3d January, 1911, does not appear to be given in payment of, or as security to, any prior existing debt, except possibly in so far as it purports to be an additional security for the debts secured by the first-mentioned mortgage. These several mortgages made in 1908, 1910,

and 1911 cannot, in the opinion of the court, be construed together so as to constitute them a general assignment, in the absence of proof that they were all in the contemplation of the parties to them at the time of the execution of the first of said mortgages. The payment set up in defense of this suit has not, in the opinion of the court, been established. The suit will be dismissed, without prejudice." After a careful examination of the record, aided by the able brief of counsel for appellant with its direct references to the pages of the transcript in which certain evidence is to be found —which evidence, in the opinion of counsel, proves the averments of the bill—we are not able to agree with counsel in their contention, but agree with the chancellor in his finding, as shown by parts of his opinion above set forth, as to what the evidence establishes and what it fails to establish.

The law in this state, on the subject in question, is to be found in the provisions of section 4295 of the Code of 1907, which section reads as follows: "Every general assignment made by a debtor, or a conveyance by a debtor, of substantially all of his property subject to execution in payment of a prior debt, by which a preference or priority of payment is given to one or more creditors, over the remaining creditors of the grantor, shall be and inure to the benefit of all the creditors of the grantor equally; but this section shall not apply to or embrace mortgages or pledges or pawns given to secure a debt contracted contemporaneously with the execution of the mortgage or pledge or pawn, and for the security of which the mortgage or pledge or pawn was given. A general assignment within the meaning of this section shall include, in addition to the conveyances now defined as such by law, every judgment confessed, attachment procured by a debtor, or other dis-

position of property by which a debtor conveys all or substantially all of his property subject to execution, in payment of, or as the security for, a prior debt, or charges such property with the payment of such debt." This statute does not make a partial assignment to one creditor inure to the benefit of all creditors.—*Inman v. Schloss,* 122 Ala. 461, 25 South. 739. The statute is not intended to declare conveyances fraudulent or void, but simply to blot out intended preferences or priorities; effect is to be given to the instrument or to the transaction that would be given to it if the statute were incorporated in the instrument or transaction as a part of it.—*Anniston Co. v. Ward,* 108 Ala. 85, 18 South. 937. The grantee, assignee, mortgagee, trustee, etc., of a general assignment becomes a trustee for all the creditors of the debtor.—*Anniston Co. v. Ward, supra.*

It is well-settled law that two or more instruments may so refer to, and be connected with, each other that all may be construed as one instrument, and all, taken together, be given the same effect that would be given in law to one instrument embracing all.—*Sewall v. Henry,* 9 Ala. 30; *Holt v. Bancroft,* 30 Ala. 200. Where a deed or a mortgage was made shortly before a general assignment, and was intended to be a partial disposition of all the property, the general assignment, when made, is then but a completion of the transaction begun by the execution of the deed or mortgage. One who has determined to make a general assignment of all of his property for the benefit of less than all of his creditors, and does so, cannot evade the statute by making separate deeds or mortgages to different creditors, and so depriving some of his creditors of all right to share in the distribution. In such cases equity will, at the suit of the creditors so denied the right to share, declare all of the separate deeds and mortgages to be a general as-

signment, if they dispose of substantially all of the debtor's property, and were intended to have the effect to prefer some of the creditors. For several instruments to be given this effect, however, they must be near together in point of time of execution, or there must be other facts and circumstances showing that the later ones were contemplated or intended when the prior ones were made—something to show that all should be considered together as perfecting or consummating the design or intent to prefer some of the creditors by a disposition of substantially all of the debtor's property. If it be shown that the several instruments were executed years, or months, apart, and that one had no connection with or relation to the other, and that the subsequent ones were not contemplated when the first were made, then they will not be construed together, as constituting one transaction. Otherwise the court would be making contracts for the parties instead of construing those made by the parties. The statute was never intended to embrace transactions which had no connection or relation one to the other, further than that they were all executed by the same debtor, and that all together might embrace substantially all the debtor's property.

In the case of *Rochester v. Armour,* 92 Ala. 435, 436, 8 South. 781, the rule we are now speaking of was declared; and it was there said: "In the case of *Holt v. Bancroft,* 30 Ala. 193, the statute we are considering for the first time came before this court for interpretation. The facts of that case were that on May 9, 1854, Holt & Chambers, merchants, made a deed of trust, and thereby conveyed about one-third of their merchandise for the security of one of their creditors. 'At the time this conveyance was executed, the debtors intended to make a general assignment of all their ef-

fects for the benefit of all their creditors, and so inform-
ed the trustee; but this intention was not communi-
cated to the preferred creditor. In pursuance of this in-
tention, on May 17, 1854 (eight days after the first
deed), they conveyed all their effects  *   *   *   for the
equal benefit of all their creditors.' This court held
that the two deeds were in law but one transaction, that
they together constituted a general assignment, and
that all the creditors took under them alike and equal-
ly. The opinion was delivered by Walker, J., and he
supported it by a strong and able argument, and by a
citation of many authorities. Speaking for the ma-
jority of the court he said. 'The question in this case
is, What effect does the law assign to the two deeds,
and according to what principle is their effect to be as-
certained and measured? All that we assert is that the
first deed is but a part of a general assignment, complet-
ed by the execution of the second deed, as the first day's
travel, although followed by some delay, is but a part
of the continued journey. The law regards the two
deeds as together composing a general assignment, be-
cause it will not permit that to be done indirectly which
cannot be done directly. That which violates the pol-
icy of a statute is as much condemned as if it violated
the letter. The law no more tolerates the evasion of a
statute by artifice than a palpable violation of it.
*   *   *   Visiting, therefore, the act of evading the
statute with the consequence of direct violation, we can
only annul the preference, and place the beneficiary of
the first deed on a footing with the other creditors.'
In *Crawford v. Kirksey,* 55 Ala. 282, 301 [28 Am. Rep.
704], we drew a distinction between that case and the
case of *Holt v. Bancroft.* We do not think the latter
case is opposed to the former. We may add that in the
case of *Crawford v. Kirksey* the main question was not

whether the two deeds constituted a general assignment, but whether the deed to Crawford was fraudulent."

The rule has been well stated by the Supreme Court of the United States as follows: "A debtor, even when financially embarrassed, may in good faith compromise his liabilities, sell or transfer property in payment of debts, or mortgage or pledge it as security for debts, or create a lien upon it by means even of a judgment confessed in favor of his creditor.—*Preston v. Spaulding, ubi supra* [120 Ill. 208, 10 N. E. 903]; *Field v. Geoghegan,* 125 Ill. 70, 16 N. E. 912. Such transactions often take place in the ordinary course of business, when the debtor has no purpose, in the near future, of discontinuing business or of going into bankruptcy and surrendering control of all his property. A debtor is not bound to succumb under temporary reverses in his affairs, and has the right, acting in good faith, to use his property in any mode he chooses, in order to avoid a general assignment for the benefit of his creditors."—*White v. Cotzhausen,* 129 U. S. 342, 9 Sup. Ct. 313, 32 L. Ed. 677.

We fully agree with the chancellor that the three several mortgages referred to in this case were not so related or connected as that they could be treated as constituting a general assignment. It, therefore, follows that there is no error in the decree dismissing the bill; and it must be affirmed.

Affirmed.

DOWDELL, C. J., and ANDERSON and DE GRAFFENRIED, JJ., concur.